EICHHORN v LAMPHERE SCHOOL DISTRICT

Docket Nos. 93071, 93072, 93073. Submitted October 16, 1987, at Detroit. Decided February 17, 1988. Leave to appeal applied for.

Terri Eichhorn, a senior at Lamphere High School, died from injuries sustained when she fell from a float which was being transported from a private residence to the marshalling area for the high school's homecoming parade. Ronald Eichhorn, as personal representative of the estate of Terri Eichhorn, commenced in Oakland Circuit Court two actions sounding in negligence and nuisance against the Lamphere School District, the Lamphere Board of Education, the high school principal, the high school assistant principal, the teacher who was the senior class advisor, the City of Madison Heights Police Department, the police officer assigned to assist in the moving of the float and others. A similar action against the same defendants was brought by Ronald and Phyllis Eichhorn, Terri's parents, in their individual capacities. In September, 1982, the school district, the board of education, the members of the board of education, the principal and the teacher moved for summary judgment on the basis of governmental immunity. The motion was denied. These defendants' attempts to appeal that order to the Court of Appeals either as of right or by leave were unsuccessful. The parties thereafter stipulated to the dismissal with prejudice of the school board and its members as defendants. In 1985 the school district, the principal, the assistant principal and the teacher moved for a rehearing of the motion for summary judgment in light of the holding of *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567 (1984). The police department and the police officer moved for summary disposition on the grounds of governmental immunity and

REFERENCES

Am Jur 2d, Sheriffs, Police, and Constables §§ 46-60.

Am Jur 2d, Municipal, Schools, and State Tort Liability §§ 50, 107, 293, 295, 296, 299.

Modern status of doctrine of sovereign immunity as applied to public schools and institutions of higher learning. 33 ALR3d 703.

Tort liability of public schools and institutions of higher learning for injuries resulting from lack of insufficiency of supervision. 38 ALR3d 830.

absence of a duty to the deceased. The trial court, Frederick C. Ziem, J., granted summary disposition in favor of the school district on the negligence claims, denied summary disposition in favor of the school district on the intentional nuisance claims, granted summary disposition in favor of the principal, denied summary disposition in favor of the teacher, denied summary disposition in favor of the assistant principal, granted summary disposition in favor of the police department and the police officer on the intentional nuisance claims, and denied summary disposition in favor of the police department and the police officer on the negligence claims. Plaintiffs appealed from the grants of summary disposition in favor of the school district on the negligence claims, in favor of the principal and in favor of the police department and police officer on the intentional nuisance claims. The police department and police officer cross-appealed from the denial of summary disposition in their favor on the negligence claims. The school district, the principal and the teacher cross-appealed from the denial of summary disposition in favor of the school district on the intentional nuisance claims and the denial of summary disposition in favor of the teacher.

The Court of Appeals *held:*

1. The sponsorship of the homecoming parade by the school district was a governmental function. Accordingly the school district is immune from liability for all negligence claims arising out of its sponsorship of the event. The trial court properly granted summary disposition to the school district on the negligence claims.

2. The high school principal's decision as to the method of carrying out the homecoming program and his selection of those who would supervise that program were acts which were in the course of his employment, were within the scope of his authority and were an exercise of a discretionary function. Accordingly, the trial court properly granted summary disposition in favor of the high school principal on the negligence claims on the basis of governmental immunity.

3. The trial court properly granted summary disposition in favor of the police department on the intentional nuisance claims. A governmental agency is immune from liability for any intentional torts so long as those torts were committed in the performance of an activity which constituted the exercise of a governmental function. The function here was a governmental function, the control of traffic.

4. Since the intentional nuisance claims pled here by plaintiffs related to the construction of the float itself, and since the

police officer was not involved in that activity but rather was involved in traffic control, plaintiffs failed to plead a valid claim of intentional nuisance against the police officer. Accordingly, summary disposition on that claim was properly granted in favor of the police officer.

5. Plaintiffs failed to plead any facts which would establish a duty of care running from the police officer to the deceased under these circumstances. Accordingly, the trial court should have granted summary disposition in favor of the police officer and police department on the negligence claims on the basis of the failure to state a claim.

6. Since sponsorship of the homecoming parade was a governmental function, the trial court should have granted summary disposition in favor of the school district on the intentional nuisance claims.

7. The affidavits filed by the parties establish that plaintiffs would be unable to establish that the teacher was responsible for the supervision of the engineering, design and construction of the float. Accordingly, the trial court should have granted summary disposition in favor of the teacher on the basis that no genuine issue of material fact existed.

Affirmed in part, reversed in part and remanded.

1. GOVERNMENTAL IMMUNITY — SCHOOLS — HOMECOMING PARADES.

The sponsorship by a school district of homecoming activities, including a homecoming parade, is a governmental activity for the purpose of governmental immunity; accordingly, decisions by the school district regarding the type of supervision it would exercise over preparations for a homecoming parade are the exercise of a governmental function for which the school district would be immune from liability for any claims for damages based upon allegations of negligence in discharging that function (MCL 380.1281; MSA 15.41282).

2. GOVERNMENTAL IMMUNITY — SCHOOLS — SCHOOL PRINCIPALS — HOMECOMING PARADES.

Decisions by a high school principal relative to the manner and amount of supervision which will be undertaken relative to the construction of floats for a school sponsored homecoming parade are discretionary acts for which the doctrine of governmental immunity applies; accordingly, a high school principal is immune from liability on any claim based upon an allegation of negligence in the principal's decisions as to the manner or amount of supervision or the appointment of a teacher to supervise the construction of a homecoming float.

3. GOVERNMENTAL IMMUNITY — INTENTIONAL TORTS — INTENTIONAL
     NUISANCE — GOVERNMENTAL FUNCTION.
     A governmental agency is immune from liability for any inten-
     tional tort, including intentional nuisance, so long as the tort
     was committed during the performance of a general activity
     which constituted the exercise of a governmental function.

4. NUISANCE — LIABILITY.
     Liability for nuisance may be placed on one who either created
     the nuisance, owned or controlled the property from which the
     nuisance arose, or employed another to do work which he knew
     was likely to create a nuisance.

5. NEGLIGENCE — DUTY — POLICE.
     A police officer, generally, owes a duty to the public and not to
     any one individual.

*Charfoos & Christensen* (by *Jared P. Buckley*
and *David R. Parker*), for plaintiffs.

*Wilson, Portnoy, Leader, Pidgeon & Roth, P.C.*
(by *Robert P. Roth*), for the Lamphere School
District and its employees.

*Ulanoff, Ross & Wesley, P.C.* (by *Stuart A. Ula-
noff*), for City of Madison Heights Police Depart-
ment and Bryan Kingsbury.

Before: WAHLS, P.J., and SAWYER and C. W.
SIMON, JR.,* JJ.

PER CURIAM. This appeal involves three lawsuits
brought by plaintiffs Ronald G. Eichhorn and
Phyllis Eichhorn in the Oakland Circuit Court,
either on behalf of their deceased daughter, Terri
Eichhorn, or on their own behalf. Terri Eichhorn
died as a result of injuries sustained when she fell
off of a float en route to a high school homecoming
parade. We affirm the trial court's grant of sum-
mary disposition to certain defendants and reverse

* Circuit judge, sitting on the Court of Appeals by assignment.

the court's denial of summary disposition to other defendants.

FACTS

In the fall of 1980, Terri Eichhorn started her senior year at Lamphere High School in Madison Heights. That year the senior class decided to build a float for display at the school's homecoming parade based on the theme of "Snoopy and the Red Baron." Accordingly, a dog house and biplane were constructed and, in an attempt to make it appear that the dog house was flying through air, it was placed on top of a metal saucer-shaped sled so that it could roll back and forth. Terri Eichhorn was chosen to wear a Snoopy costume and sit inside the dog house.

The float was built at the home of Judith and Charles Holloway, parents of another senior high school student. Since the floats were part of a competition between the student classes, the policy was that only the students were to participate in their design and construction. However, the night before the parade, assistant principal Leon Klein and class sponsor Catherine Maxwell visited the Holloway home in order to check on the status of the float construction. Klein was also expected to inspect the float at the staging area, just prior to its actually joining the homecoming parade.

On the day of the parade, October 17, 1980, it was windy and slightly stormy. An unidentified person, apparently in conformance with instructions given by Leon Klein, requested that the City of Madison Heights Police Department provide a police escort for the float from the Holloway home to the staging area of the parade. Bryan Kingsbury, a reserve police officer for the city, was sent to escort the float. Upon arrival at the Holloway

home, Kingsbury observed ten to twenty students sitting on the float and told an unidentified man that no one should ride on the float during transport. Kingsbury heard this unidentified man tell the students to get off of the float and observed that the students complied. Unbeknownst to Kingsbury, however, Terri Eichhorn, dressed in a Snoopy costume, remained on the float inside the dog house. Kingsbury believed that the Snoopy head he saw at the top of the dog house belonged to a stuffed animal.

The float, which was built on a trailer, was pulled by a truck. As the truck turned the corner at Thirteen Mile Road and John R., at a rate of one to three miles per hour, the dog house was blown off. Terri Eichhorn, who was still inside the dog house, fell to the ground and died from injuries to her head sustained during the fall.

### PROCEDURAL HISTORY

In the wake of the death of Terri Eichhorn, three lawsuits were filed. The first lawsuit (No. 93071) was filed by Ronald G. Eichhorn, acting as the personal representative of the estate of his daughter, Terri Eichhorn, and named as defendants the Lamphere School District, the Lamphere Board of Education,[1] Edmund Tatarek, Robert Brunk, Robert Borngesser, Anthony Perisi, Harry Gibson, Frederick Hiller, George McNair, Charles Holloway, Judith Holloway, David Hadden, Catherine Maxwell, the City of Madison Heights Police Department, Bryan Kingsbury, Richard Arndt, and Mary Arndt. The complaint, which alleged negligence against each defendant, was subse-

[1] The Lamphere School District and the Lamphere Board of Education were originally identified as one party, namely the Board of Education, Lamphere School District, but were subsequently treated as two separate parties.

quently amended to add Leon Klein as a party defendant and to allege a count of nuisance against each defendant. The second lawsuit (No. 93072) was filed on November 29, 1982, by Ronald G. Eichhorn, as personal representative of the estate of Terri Eichhorn, and named Charles Holloway as defendant. This complaint alleged nuisance and intentional nuisance.[2] Finally, the third lawsuit (No. 93073) was filed on December 16, 1982, by Ronald G. Eichhorn and Phyllis Eichhorn, on their own behalf, and named as defendants the same parties sued in the first lawsuit. This complaint alleged negligence and nuisance against each defendant.

A motion for summary judgment on the basis of governmental immunity was brought by defendants Lamphere School District, Lamphere Board of Education, Edmund Tatarek, Robert Brunk, Robert Borngesser, Anthony Peresi, Harry Gibson, Frederick Hiller, George McNair, David Hadden, and Catherine Maxwell on January 25, 1982, and was denied on September 21, 1982. When these defendants appealed to this Court, we dismissed the appeal without prejudice because the lower court's order was not a final order appealable by right under GCR 1963 806.1, now MCR 7.203(A). Unpublished order of the Court of Appeals, issued November 16, 1982 (Docket No. 67341). Subsequently, this Court denied a delayed application for leave to appeal the lower court's denial of summary judgment on the basis of not being persuaded of the need for immediate appellate review. Unpublished order of the Court of Appeals, issued May 31, 1983 (Docket No. 69313).

On April 21, 1983, the parties in the first and

---

[2] The first and second lawsuits were consolidated by order of the trial court on May 17, 1983. There does not appear to be an issue on appeal in the second lawsuit.

second lawsuits stipulated to the dismissal with prejudice of defendants Lamphere Board of Education, Edmund Tatarek, Robert Brunk, Robert Borngesser, Anthony Perisi, Harry Gibson, Frederick Hiller, and George McNair. These same parties were dismissed from the third lawsuit on April 29, 1983.

*Ross v Consumers Power Co (On Reh)*, 420 Mich 567; 363 NW2d 641 (1984), which significantly changed the landscape of governmental immunity law in Michigan, was released on January 22, 1985. On August 14, 1985, defendants Lamphere School District, David Hadden, Catherine Maxwell, and Leon Klein moved for a rehearing of their pre-*Ross* motions for summary judgment based on governmental immunity. Moreover, defendants City of Madison Heights Police Department and Brian Kingsbury moved on November 25, 1985, for summary disposition on the grounds of governmental immunity and the absence of a duty to the deceased. On March 12, 1986, a hearing was held; and on May 21, 1986, the trial court issued a final order in which the following rulings were made:[3]

(1) grant of summary disposition in favor of defendant Lamphere School District as to all negligence claims;

(2) denial of summary disposition in favor of defendant Lamphere School District as to all intentional nuisance claims;

(3) grant of summary disposition in favor of defendant David Hadden;

(4) denial of summary disposition in favor of defendant Catherine Maxwell;

(5) denial of summary disposition in favor of defendant Leon Klein;

---

[3] Although the third lawsuit had not been consolidated at the trial level with the first and second lawsuits, it was nevertheless included in the court's May 21, 1986, final order.

(6) grant of summary disposition in favor of defendants City of Madison Heights Police Department and Bryan Kingsbury as to all intentional nuisance claims; and

(7) denial of summary disposition in favor of defendants City of Madison Heights Police Department and Bryan Kingsbury as to all negligence claims.

Plaintiffs appealed from rulings 1, 3, and 6; defendants City of Madison Heights Police Department and Bryan Kingsbury cross-appealed from ruling 7; and defendants Lamphere School District, David Hadden, and Catherine Maxwell cross-appealed from rulings 2 and 4.[4]

The trial dates of the three lawsuits, which were consolidated on appeal by this Court, were adjourned by stipulation of the parties pending the outcome of the issues now on appeal and cross-appeal.

ISSUES

I

Plaintiffs contend that the trial court erred in granting summary disposition in favor of defendant Lamphere School District regarding all claims of negligence. There is no dispute that plaintiffs pled facts which alleged that the tort occurred during the exercise or discharge of a nongovernmental function. *Hoffman v Genesse Co*, 157 Mich App 1, 6; 403 NW2d 485 (1987). Thus, the school district argued below that plaintiffs' claims against it were barred due to immunity

---

[4] No cross-appeal was made on ruling 5 by defendant Leon Klein. Moreover, defendants Charles and Judith Holloway and Richard and Mary Arndt are not involved in an appeal or cross-appeal.

granted by law.[5] MCR 2.116(C)(7). When reviewing a motion brought under MCR 2.116(C)(7), a court must consider the affidavits, together with the pleadings, depositions, admissions and documentary evidence filed or submitted by the parties. MCR 2.116(G).

The rules enunciated in *Ross, supra,* are applicable to the instant lawsuits because they were pending in the trial court on January 22, 1985, the date of the release of the *Ross* decision by the Supreme Court. *Hyde v University of Michigan Bd of Regents,* 426 Mich 223, 241; 393 NW2d 847 (1986). Under the rules set out in *Ross,* governmental agencies, such as the Lamphere School District herein, are immune from tort liability when they are engaged in the exercise or discharge of a governmental function. *Ross, supra,* p 608; MCL 691.1407; MSA 3.996(107). The term "governmental function," especially when viewed in the context of "the four narrowly drawn statutory exceptions,"[6] is to be interpreted in a broad

---

[5] In 1983, defendants Lamphere School District, David Hadden, and Catherine Maxwell filed a motion for summary judgment under GCR 1963, 117.2(1), now MCR 2.116(C)(8), for failure to state a claim upon which relief could be granted. This motion, which was based on the argument that defendants were immune under the doctrine of governmental immunity, was denied by the court in 1983. In 1985, defendants requested a rehearing, and in its May 21, 1986, order, the trial court granted summary disposition in favor of defendant school district as to all negligence claims. The motion should have been premised on MCR 2.116(C)(7) regarding the barring of a claim because of immunity granted by law. We note that at the time defendants originally filed their motion, GCR 1963, 116.1(5), the predecessor of MCR 2.116(C)(7), did not include "immunity granted by law" within its terms of coverage. In any case, since the mere mislabeling of a motion does not preclude review where the lower court record otherwise permits review, *Hoffman v Genesee Co,* 157 Mich App 1, 9; 403 NW2d 485 (1987), and, since the record in the present case includes ample evidentiary material in the form of affidavits, depositions, and other documentary evidence, appellate review is not precluded.

[6] The four categories of activity for which tort liability may be imposed, despite the general rule that state and local governmental agencies enjoy the cloak of immunity, include bodily injury and

manner. *Ross, supra,* p 618. Thus, a governmental function is any activity "which is expressly or impliedly mandated or authorized by constitution, statute, or other law." *Ross, supra,* p 620.

Plaintiffs argue that their daughter's death occurred during Lamphere School District's exercise or discharge of a nongovernmental function. In essence, plaintiffs characterize the act of sponsoring a high school homecoming parade in which student classes receive little supervision as constituting a nongovernmental function. The operation of a school district is governed by the School Code of 1976. MCL 380.1 *et seq.;* MSA 15.4001 *et seq.* Although nothing in this code expressly authorizes a school district to conduct a homecoming program or parade, we believe that such activity is impliedly authorized. MCL 380.1282; MSA 15.41282 states that the board of a school district shall establish and administer "the grades, schools, and departments it deems necessary or desirable for the maintenance and improvement of the schools." In addition, MCL 380.1289(1); MSA 15.41289(1) permits the board of a school district to join an organization, association, or league which has as its object the promotion and regulation of sport and athletic, oratorical, musical, dramatic, creative arts, or other contests by or between students. The sponsorship of a homecoming program which included a homecoming parade was an activity deemed desirable by defendant school district for the maintenance and improvement of the schools. Moreover, the establishment of a competition be-

---

property damage arising out of the failure to keep highways in reasonable repair, MCL 691.1402; MSA 3.996(102); the negligent operation of a government-owned motor vehicle by an agency's officer, agent or employee; MCL 691.1405; MSA 3.996(105); the dangerous or defective conditions in public buildings under the agency's control, MCL 691.1406; MSA 3.996(106); and the commission of an act while engaged in a proprietary function, MCL 691.1413; MSA 3.996(113). See *Ross, supra,* pp 593-594.

tween student classes constituted a contest, the object of which apparently was to promote the creative arts and to foster school spirit.

Since we believe that the school district was impliedly authorized to sponsor a homecoming program which included a homecoming parade, it follows that the school district's decision regarding the type of supervision it would exercise over the float competition was made within the exercise of a governmental function. Accordingly, the school district is immune from liability for all negligence claims arising out of the exercise of that function, and the trial court's grant of summary disposition on this issue was proper.

II

Plaintiffs also argue that the trial court erred in granting summary disposition in favor of David Hadden, the principal of Lamphere High School, regarding his actions in administering the homecoming program.[7] They assert that, with respect to the events that led to their daughter's death, Hadden had negligently performed a ministerial-operational function and thus is not immune from tort liability under the doctrine of governmental immunity as set forth in *Ross.* Hadden responds that, as the school's highest executive official, he is entitled to absolute immunity and that, even if he is treated as a lower-level official, the conduct asserted to be tortious by plaintiffs was performed as a discretionary, not a ministerial, act.

Judges, legislators, and the highest executive officials of all levels of government are absolutely immune from all tort liability whenever they are acting within their respective judicial, legislative, and executive authority. *Ross, supra,* p 592. Lower-

---

[7] See n 5, *supra.*

level officials, employees, and agents are immune from tort liability only when they are (1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority; (2) acting in good faith; and (3) performing discretionary, as opposed to ministerial, acts. *Ross, supra,* pp 633-634.

First, defendant briefly argues that he should be absolutely immune since a principal of a high school is the highest executive official of that school. We find defendant's argument to be meritless. Although a principal may be the highest ranking executive official in his or her school, a high school principal is not the highest executive official in the level of government in which he or she is employed. Stated differently, a high school principal does not enjoy broad-based jurisdiction or wield extensive authority similar to that of a judge, a legislator, or even an official such as the superintendent of a school system. Thus, if Hadden is immune from tort liability in connection with the death of Terri Eichhorn, he must obtain that protection as a lower-level official.

There is no dispute that defendant Hadden was acting in the course of his employment, within the scope of his authority, and in good faith. Rather, the dispute centers on whether Hadden's actions were discretionary. The actions complained of and set forth in the pleadings were Hadden's supervision of the homecoming parade, which included supervision of the construction of the float, and the assignment of personnel who were inadequately trained to supervise the construction of a float. Plaintiffs allege:

> 31. That Defendant David Hadden breached that duty [to defendant to properly supervise the design, construction, and use of the homecoming

float in order to avoid injury to decedent] by one or
more of the following negligent omissions or acts:

a) He assigned to Catherine Maxwell, a person
he knew or should have known, was inadequately
trained, the task of supervising the engineering,
design, construction and use of the float.

b) He permitted to persist after assumption of
the aforesaid duty, a condition dangerous to dece-
dent, the dangerous condition consisting of the
lack of trained supervision during the designing,
construction, and use of the float.

c) He failed to act, after assumption of the
aforesaid duty, to prevent harm to decedent from a
float that was so clearly dangerous that he knew
or should have known that it was unsafe.

It is clear that Hadden had no personal involve-
ment in either the construction of the float or the
supervision of such construction, thus requiring
plaintiffs to focus on the principal's establishment
and execution of the homecoming float program.

In *Ross,* the Supreme Court emphasized that, in
a nutshell, the distinction between "discretionary"
acts, for which immunity is available, and "minis-
terial" acts, for which liability exists, is that "the
former involves significant decision-making, while
the latter involves the execution of a decision and
might entail some minor decision-making." *Ross,
supra,* p 635. Hadden established a program which
provided little or no supervision over the construc-
tion of homecoming floats by student classes at
Lamphere High School. This decision apparently
reflected Hadden's assessment regarding the best
method of realizing the fulfillment of the purposes
underlying the float-making portion of the home-
coming program. As such, it involved decision-
making and not the mere execution of a decision.
Moreover, if plaintiff's allegation that Hadden neg-
ligently appointed Catherine Maxwell as the su-
pervisor of the float project were established, im-

munity would still protect Hadden since the permissible hiring of personnel constitutes a discretionary act. *Ross, supra,* p 640. Accordingly, David Hadden, as a lower-level governmental employee, is immune from all negligence claims, and the trial court's grant of summary disposition on this issue was proper.

### III

Plaintiffs next contend that the trial court erred in granting summary disposition in favor of defendants City of Madison Heights Police Department and Bryan Kingsbury as to all intentional nuisance claims. The question whether, in the wake of *Ross,* an exception to the governmental immunity doctrine remained for claims sounding in intentional nuisance recently was answered in part by the Supreme Court in *Smith v Dep't of Public Health,* 428 Mich 540, 601-611; 410 NW2d 749 (1987). The *Smith* Court held that a governmental agency is immune from liability for any intentional torts so long as those torts were committed during the performance of a general activity which constituted the exercise of a governmental function. Specifically, the Court stated that "intentional torts are immune [sic] if committed within the scope of a governmental function."[8] *Smith, supra,* p 611. Therefore, under *Smith,* defendant City of Madison Heights Police Department is immune from liability for any intentional torts because such torts, if any were committed, oc-

---

[8] The *Smith* Court qualified its holding that there exists no "intentional tort" exception to governmental immunity by noting that "the intentional use or misuse of a badge of governmental authority for a purpose unauthorized by law is not the exercise of a governmental function." *Smith v Dep't of Public Health,* 428 Mich 540, 611; 410 NW2d 749 (1987). This qualification is not relevant for purposes of the instant issue raised by plaintiffs on appeal.

curred during the exercise of a governmental function, namely, the control of traffic.

The Smith Court did not, however, address the question of the liability of lower-level officials, employees, and agents, such as reserve police officer Bryan Kingsbury herein, for their intentional torts. Nevertheless, we find that the resolution of this issue is not necessary in this case because plaintiffs' complaints failed to adequately aver a claim of intentional nuisance against Kingsbury.

Nuisances in fact are comprised of intentional nuisances and negligent nuisances. *Gerzeski v Dep't of State Highways*, 403 Mich 149, 161; 268 NW2d 525 (1978). An intentional nuisance is a nuisance created by conduct intended to bring about conditions which, in fact, constitute a nuisance. *Dinger v Dep't of Natural Resources*, 147 Mich App 164, 173; 383 NW2d 606 (1985), citing, inter alia, *Denny v Garavaglia*, 333 Mich 317, 331; 52 NW2d 521 (1952). This Court has stated that "[l]iability for nuisance may be placed on one who either created the nuisance, owned or controlled the property from which the nuisance arose, or employed another to do work which he knows is likely to create a nuisance." *Lipka v Macomb Co Bd of Road Comm'rs*, 155 Mich App 624, 629-630; 400 NW2d 698 (1986).

The first amended complaint of plaintiffs' first lawsuit averred a nuisance claim in paragraph 2:

> That the Defendants, jointly and severally, in allowing the dangerous condition to exist, to wit: the float upon which Plaintiff's Decedent was riding at the time of her death, created a nuisance per se and/or nuisance per accidens and/or an intentional nuisance.

In the third amended complaint of the first law-

suit, plaintiffs set forth their nuisance claim in more detail:

> 2. That all Defendants knew or should have known at the time the float was completed that the doghouse, unsecured to the trailer, rocking back and forth with a person in it, created a nuisance.
>
> 3. That all Defendants did not make a proper inspection of the float prior to allowing it to be transported on the streets, with Plaintiffs' decedent riding in it, which, if such inspection was made, all Defendants would have known that a nuisance existed and was a danger to Plaintiffs' decedent.
>
> 4. That all Defendants were under a duty to inspect the float, knowing a person would be riding on it and if they had properly inspected the float, they would have known of the existing dangerous condition which was a nuisance and existed as a dangerous and hazardous condition.
>
> 5. That all Defendants knew or should have known that a dangerous and hazardous condition existed and that harm to a person, such as Plaintiff's decedent, was substantially certain to follow.
>
> 6. That all Defendants controlled all the materials used to construct the homecoming float.
>
> 7. That all Defendants failed to take any action to abate the nuisance.

Although in paragraph 6 plaintiffs allege that all defendants controlled the materials used to construct the homecoming float, at the March 12, 1986, hearing, they conceded that "Kingsbury didn't control the materials used to construct" the float. Plaintiffs thus failed to state that Kingsbury created a nuisance, owned or controlled the property from which a nuisance arose, or employed another to do work which he knew was likely to create a nuisance. As such, plaintiffs' allegations were insufficient to support a claim of intentional

nuisance against the reserve police officer who was sent by the City of Madison Heights Police Department merely to escort the senior-class float from the Holloway home to the staging area of the 1980 Lamphere High School homecoming parade.

Accordingly, defendant City of Madison Heights Police Department, in accordance with the rule established in *Smith v Dep't of Public Health,* *supra,* regarding intentional torts and governmental immunity, and defendant Bryan Kingsbury, in accordance with the rule reiterated in *Lipka v Macomb Co Bd of Road Comm'rs, supra,* regarding the averment requirements of a claim for intentional nuisance, were properly granted summary disposition by the trial court.

## IV

Defendants City of Madison Heights Police Department and Bryan Kingsbury argue that the trial court erred in denying their motion for summary disposition regarding all negligence claims, asserting that Kingsbury owed no duty of care to the deceased, Terri Eichhorn. The trial court found that such a duty existed. Defendants had filed their motion under MCR 2.116(C)(8), arguing, among other things, that they owed no duty to Terri Eichhorn and thus were entitled to a grant of summary disposition on the basis of plaintiffs' failure to state a claim upon which relief could be granted. In ruling on such a motion, a court accepts as true all well-pled facts and determines whether the plaintiffs' claim, on the pleadings, is so clearly unenforceable as a matter of law that no factual development could possibly justify a right to recovery. *Abel v Eli Lilly & Co,* 418 Mich 311, 323-324; 343 NW2d 164 (1984), cert den sub nom *E R Squibb & Sons, Inc v Abel,* 469 US 833 (1984).

The elements necessary to set forth a cognizable claim for negligence are (1) duty, (2) general standard of care, (3) specific standard of care, (4) cause in fact, (5) legal or proximate cause, and (6) damages. *Moning v Alfono,* 400 Mich 425, 437; 254 NW2d 759 (1977), reh den 401 Mich 951 (1977), supplemental order on reh 402 Mich 958 (1978). The element presently at issue is whether Kingsbury had a duty to protect Terri Eichhorn. Duty has been defined as "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct towards another." *Hetterle v Chido,* 155 Mich App 582, 587; 400 NW2d 324 (1986). Whether such an obligation will be imposed is determined by the relationship between the actor and the injured person. *Id.* It is well established that the threshold question of duty is an issue of law for the court to decide. *Moning, supra,* pp 436-437; *Duvall v Goldin,* 139 Mich App 342, 347; 362 NW2d 275 (1984), lv den 422 Mich 976 (1985).

Plaintiffs allege that reserve police officer Kingsbury's duty to decedent to "supervise the move in a careful, prudent manner, and to avoid injuring the decedent," arose by reason of Kingsbury's undertaking to supervise the movement of the float from the Holloway home to the parade's starting point. However, it is clear that, generally, a police officer owes a duty to the general public, and not to any one individual. *Maksinczak v Salliotte,* 140 Mich App 537, 540; 364 NW2d 737 (1985); *Zavala v Zinser,* 123 Mich App 352, 356; 333 NW2d 278 (1983), aff'd sub nom *Ross v Consumers Power Co (On Reh),* 420 Mich 567; 363 NW2d 641 (1984), reh den 421 Mich 1202 (1985). Plaintiffs' pleadings have not sufficiently averred facts showing that Kingsbury, as a reserve police officer, owed a duty to protect the decedent.

However, a person may owe a duty to an individual, irrespective of his or her status as a police officer, if a special relationship existed between the parties which the law recognizes and defines as including a duty to conform to a particular standard of conduct toward another. *Hetterle, supra,* pp 587-588. But since plaintiffs, in essence, allege no more in their complaints than that Kingsbury breached his duty to properly escort the parade float, no facts were pled which showed that such a special relationship existed. The pleadings reveal that Kingsbury's function was to escort the homecoming parade float from the Holloway home to the parade staging area, and not to protect students. Therefore, as no facts were pled that show Kingsbury owed a duty to protect Terri Eichhorn, an essential element of actionable negligence was lacking, and the trial court erred in denying summary disposition in favor of defendants Kingsbury and the City of Madison Heights Police Department pursuant to MCR 2.116(C)(8) for failure to state a claim upon which relief could be granted.

V

Plaintiffs also argue on appeal that defendant Bryan Kingsbury is not entitled to protection from tort liability under the doctrine of governmental immunity with respect to his actions in escorting the homecoming parade float and in advising students not to ride on the float during transit. Our determination in subpart IV in this section of our opinion, that Kingsbury owed no duty to decedent and thus is entitled to summary disposition under MCR 2.116(C)(8), renders moot the issue of his entitlement to governmental immunity under the test for lower-level government employees as set forth in *Ross, supra,* pp 633-634.

## VI

Next, defendant Lamphere School District contends that the trial court erred in denying its motion for summary disposition regarding all intentional nuisance claims.[9] As noted in subpart III in this section of our opinion, the Supreme Court has recently held that a governmental agency is immune from liability for any intentional torts committed within the scope of a governmental function. *Smith v Dep't of Public Health,* 428 Mich 540, 601-611; 410 NW2d 749 (1987).

In subpart III of this section of our opinion, we excerpted the portions of plaintiffs' pleadings alleging an intentional nuisance claim. Since the complained-of actions were committed during the general activity of sponsoring a homecoming parade, the key question under *Smith* becomes whether such sponsorship constituted a governmental function. We have already concluded, in subpart I of this section of our opinion, that the homecoming parade was impliedly authorized by the School Code of 1976, MCL 380.1 *et seq.;* MSA 15.4001 *et seq.* It follows, therefore, that the defendant school district is immune from liability for any intentional torts committed during the sponsorship of the parade. Accordingly, we find that the trial court erred in denying summary disposition in favor of the school district regarding all intentional nuisance claims.

## VII

Finally, it is argued that the trial court erred in denying summary disposition in favor of defendant Catherine Maxwell, who contends on appeal that, in conformance with the requirements of MCR 2.116(C)(10), no genuine issue of any material fact existed and she was entitled to judgment as a

---

[9] See n 5, *supra.*

matter of law.[10] Our review of this issue convinces us that Maxwell should have been granted summary disposition under MCR 2.116(C)(10) because plaintiffs' allegations that Maxwell was responsible for the supervision of the engineering, design, and construction of the homecoming parade float from which Terri Eichhorn fell could not be supported at trial.

The standard for the grant or denial of a motion for summary disposition under MCR 2.116(C)(10) is well-settled and was recently reiterated by this Court in *Williams v Jones,* 157 Mich App 115, 118; 403 NW2d 516 (1987):

> A motion for summary disposition pursuant to MCR 2.116(C)(10) should be granted only if the trial court finds that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Bennington Twp v Maple River Inter-County Drain Bd,* 149 Mich App 579, 584; 386 NW2d 599 (1986). In order to prevail, the movant must show that no future development of the evidence could justify a judgment in favor of the opposing party. The trial court should be liberal in finding that there is a question of fact, and all doubts should be resolved in favor of the nonmoving party. *Bennington, supra.*

In the complaint of their first lawsuit, plaintiffs stated the following allegations against defendant Catherine Maxwell:

> 26. That Defendant, Catherine Maxwell, by undertaking to supervise the engineering, design, and

---

[10] We note that, although the motion was brought under MCR 2.116(C)(8), failure to state a claim which relief could be granted, the trial court analyzed the question as if it were brought under MCR 2.116(C)(10). Under such a circumstance, the failure on the part of plaintiff to provide responsive affidavits or other documentary evidence identifying issues of material fact is not alone a ground for the grant of summary disposition in a defendant's favor. MCR 2.116(G)(4).

construction of the float, assumed a duty to decedent to supervise the engineering, design and construction adequately and in a careful and prudent manner and to avoid injuring the decedent.

27. That Defendant, Catherine Maxwell, breached the aforesaid duty by one or more of the following negligent acts or omissions:

a) She undertook the task of supervising the designing and construction of the float when she knew or should have known that she lacked adequate training in the engineering, design, construciton [sic], and safety techniques of parade floats.

b) She permitted to persist after assumption of the aforesaid duty, a condition dangerous to decedent, by undertaking construction of a float without the supervision of an adequately trained person.

c) She permitted to persist after assumption of the aforesaid duty a condition dangerous to the decedent, the dangerous condition consisting of permitting the decedent to ride on a float so clearly dangerous and unsafe and that she knew or ought to have known was unreasonably unsafe."

d) She permitted the construction, under her supervision, of a float that was so clearly dangerous that she knew or should have know that it was unsafe.

The evidence presented in the affidavits of Catherine Maxwell and Leon Klein directly contradict the allegations made by plaintiffs. Leon Klein, the then-assistant principal of Lamphere High School, described the responsibilities of a class sponsor, such as Maxwell, as follows:

Their basic responsibilities were to work with the class in terms of facilitating, obtaining materials, purchasing of materials which would come through the book store secretary. Each class did have an account in the Students' Activities Fund and if they needed some materials or equipment,

supplies, they would buy it, return a receipt and be reimbursed.

She [defendant Maxwell] would facilitate that process. She would help them, if needed, in locating a float, providing moral support, helping the kids in determining their individual theme, and really providing the kind of background support to see to it that things proceeded in a normal pace and that they were ready.

Maxwell herself agreed with Klein's descriptions of her responsibilities. She stated in her affidavit that she was there only for the "moral support of the kids" and that she did not undertake to supervise the engineering, design, and construction of the float. Moreover, Klein stated that the responsibility of checking the stability of the float was his and was to be performed when the float arrived at the staging area just prior to entry into the parade. From this, we conclude that plaintiffs' allegations that defendant Catherine Maxwell was responsible for the supervision of the engineering, design, and construction of the homecoming parade float could not be supported by future development of the evidence.

Plaintiffs, however, attempt to draw the inference that Maxwell was responsible for the supervision of the construction of the float from the fact that "[s]he was the only person from the school district who had any responsibility at all as to the design, construction and supervision of the students regarding the float." This inference is not reasonable because, without more, the fact that Maxwell alone may have been responsible in this project for the moral support of the senior class does not translate into a possible finding that she was, thereby, additionally responsible for the supervision of the construction of the float. The failure to assign any personnel to supervise the

construction of the float reflects conduct within the purview of either the defendant school district or defendant Hadden when they established the homecoming program. Maxwell is not arguing that she made the discretionary decision not to supervise, rather, she points out that supervision of the students was never one of her responsibilities.

Accordingly, we conclude that the trial court erred in denying summary judgment in favor of defendant Catherine Maxwell pursuant to MCR 2.116(C)(10).

### CONCLUSION

To sum up, we affirm the trial court's grant of summary disposition in favor of the Lamphere School District regarding all claims of negligence; in favor of David Hadden regarding all claims of negligence; and in favor of the City of Madison Heights Police Department and Bryan Kingsbury regarding all claims of intentional nuisance. However, we reverse the trial court's denial of summary disposition to the City of Madison Heights Police Department and Bryan Kingsbury regarding all claims of negligence based on actions by Kingsbury, to the Lamphere School District regarding all claims of intentional nuisance, and to Catherine Maxwell regarding all claims of negligence.

Affirmed in part and reversed in part.