CHIVAS v KOEHLER

Docket No. 104628. Submitted December 19, 1989, at Lansing. Decided March 5, 1990. Leave to appeal applied for.

Martin D. Chivas was shot to death by two prisoners who had escaped from a minimum security facility operated by the Michigan Department of Corrections. Lawrence Chivas, as administrator of the estate of Martin D. Chivas, brought an action for damages in Oakland Circuit Court against Perry Johnson, Director of the Department of Corrections, Robert Brown, Jr., Deputy Director of the Department of Corrections, Theodore Koehler, Gary Wells and Raymond Buchkoe, wardens of the Marquette State Prison, Ronald E. Gach, superintendent of the Michigan Intensive Program Center, and James Oxenford and Thomas Sharland, guards at the minimum security facility, alleging negligence on the part of the director, assistant director, wardens and superintendent in transferring the prisoners from the Michigan Intensive Program Center, a maximum security facility on the grounds of the Marquette State Prison, to the minimum security facility from which the prisoners escaped and alleging negligence on the part of the guards at the minimum security facility in allowing the prisoners to escape from that facility. Defendants moved for summary and accelerated judgment. The trial court, William John Beer, J., denied the motion. Defendants appealed by leave granted. The Court of Appeals reversed, holding that defendants were immune from tort liability on the basis of governmental immunity. 124 Mich App 195 (1983). Plaintiff appealed. The Supreme Court vacated the judgments of the Court of Appeals and trial court and remanded the case to the trial court for reconsideration in light of *Ross v Consumers Power Co (On Reh)*, 420 Mich 567 (1984). 422 Mich 898 (1985). The trial court, Robert C. Anderson, J., granted summary disposition in favor of the director, assistant director, wardens and superintendent on the ground of governmental immunity and in favor of the guards

REFERENCES

Am Jur 2d, Escape, Prison Breaking, and Rescue § 21.
Liability of public officer or body for harm done by prisoner permitted to escape. 44 ALR3d 899.

on the ground that they owed no duty to plaintiff's decedent. Plaintiff appealed.

The Court of Appeals *held:*

1. High level executive officials are immune from all tort liability whenever they are acting within their executive authority. The director and deputy director are such high level officials. Any act by them relative to the placement of a prisoner in a particular correction facility is an act within their executive authority.

2. While the wardens and superintendent are not high level officials entitled to absolute tort immunity, they would be immune if they were acting within their authority in good faith and performing a discretionary, as opposed to a ministerial, act. Any decision as to the placement or transfer of a prisoner is within the authority of these officials and involves the performing of a discretionary act.

3. Generally, a prison guard, like a police officer, owes a duty to the public and not to any one individual. Defendant guards owed a duty to the general public to prevent the prisoners from escaping; however, since there was no special relationship between the guards and the escaped prisoners, there was no duty running to any particular member of the public, including plaintiff's decedent.

Affirmed.

1. GOVERNMENTAL IMMUNITY — TORTS — DEPARTMENT OF CORRECTIONS — GOVERNMENTAL OFFICIALS.

The Director of the Michigan Department of Corrections and his deputy director in charge of the Bureau of Correctional Facilities are among those high level executive officials who are immune from all tort liability whenever they are acting within their executive authority.

2. GOVERNMENTAL IMMUNITY — TORTS — PRISONS — WARDENS — LOWER-LEVEL OFFICIALS.

Prison wardens and superintendents of correctional facilities are not high level executive officials who are absolutely immune from all tort liability while acting within their executive authority; prison wardens and superintendents of correctional facilities are, however, immune from tort liability for torts committed while they are acting in the course of their employment or reasonably believing that they are acting within the scope of their authority, are acting in good faith, and are performing discretionary, as opposed to ministerial, acts.

3. NEGLIGENCE — DUTY — PRISON GUARDS.

A prison guard, like a police officer, generally owes a duty to the

public and not to any one individual; accordingly, in the absence of some special relationship, a prison guard's duty to prevent a prisoner from escaping from a correctional facility, being owed to the public in general, does not create personal liability on the guard's part for injuries inflicted on a person by a prisoner who through the guard's negligence was able to escape from the correctional facility.

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Kathleen L. Bogas*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *K. Davison Hunter,* Assistant Attorney General, for defendants.

Before: MICHAEL J. KELLY, P.J., and SULLIVAN and G. S. ALLEN,* JJ.

G. S. ALLEN, J. Plaintiff appeals by right from a May 21, 1987, circuit court order granting summary disposition in favor of defendants Koehler, Wells, Buchkoe, Johnson, Gach and Brown on the ground of governmental immunity and from an October 21, 1987, order granting summary disposition in favor of defendants Oxenford and Sharland on the ground that they owed no duty to plaintiff's decedent. This case was previously before this Court in *Chivas v Koehler,* 124 Mich App 195; 333 NW2d 509 (1983). On May 22, 1985, our Supreme Court vacated the judgments of this Court and the circuit court, and remanded the case to the circuit court for reconsideration in light of *Ross v Consumers Power Co (On Reh),* 420 Mich 567; 363 NW2d 641 (1984). 422 Mich 898 (1985). It is from subsequent orders issued by the circuit court that plaintiff appeals. We affirm.

Plaintiff's decedent was shot to death by two

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

escaped prisoners on April 22, 1974. The two prisoners had previously been assigned to the Michigan Intensive Program Center (MIPC), a maximum security facility for high risk and high escape risk offenders located on the grounds of Marquette State Prison, but constituting a separate institution with a separate superintendent. However, the two inmates were transferred to Mangum Farms, a minimum security facility housing trustee prisoners. They escaped on April 20, 1974, and went on a crime spree, committing several murders including that of plaintiff's decedent.

Plaintiff filed the instant action against the various defendants, alleging that they allowed the two prisoners to escape by negligently and wrongfully placing them in a minimum security facility and by failing to carry out proper capture procedures. In the May 21, 1987, order, the trial court granted summary disposition to Perry Johnson, Director of the Michigan Department of Corrections (MDOC); Robert Brown, Jr., Deputy Director of the MDOC; Theodore Koehler, Gary Wells and Raymond Buchkoe, wardens of the Marquette Branch Prison;[1] and Ronald Gach, superintendent of the MIPC, on the basis of governmental immunity. In the October 21, 1984, order, the trial court granted summary disposition to James Oxenford and Thomas Sharland, the guards on duty at Mangum Farms when the escape occurred, on the ground that they owed no duty to plaintiff's decedent.[2]

Plaintiff argues that the trial court erred in

[1] A transition in the warden position was taking place during the time period allegedly relevant to this case. Buchkoe retired several months prior to the escape, and Wells became acting warden. According to deposition testimony, Wells was training Koehler between April 15 and 19, 1974. Koehler officially took over the duties of warden, and Wells' duties ceased, at noon on April 19, 1974.

[2] The titles listed above for the defendants are those held at the time pertinent to this case.

granting Johnson, Brown, Koehler, Wells, Buchkoe and Gach summary disposition on the ground that their actions were entitled to immunity granted by law. MCR 2.116(C)(7). When reviewing a motion brought under MCR 2.116(C)(7), a court must consider all affidavits, pleadings, depositions, admissions and documentary evidence filed or submitted by the parties. MCR 2.116(G)(5); *Eichhorn v Lamphere School Dist,* 166 Mich App 527, 536; 421 NW2d 230 (1988), lv den 431 Mich 861 (1988).

Perry Johnson was the Director of the MDOC. Under *Ross,* "judges, legislators, and the highest executive officials of all levels of government are absolutely immune from all tort liability whenever they are acting within their judicial, legislative, or executive authority." *Ross, supra,* p 633. An executive should have broad-based jurisdiction or extensive authority similar to that of a judge or legislator. *Eichhorn, supra,* p 539. Here, Johnson was the highest executive in the MDOC. Thus, we find he would qualify under *Ross* for absolute immunity.

Robert Brown, Jr., Deputy Director of the MDOC in charge of the Bureau of Correctional Facilities, was responsible for approving the transfer of inmates out of the MIPC. No one else reviewed his approval for persons transferring out of the MIPC. He, too, exercised broad-based jurisdiction and extensive authority as the administrator over the Bureau of Correctional Facilities. Therefore, we find that he was one of the "highest executive officials" in his department of state government, and thus entitled to absolute immunity under *Ross.* Therefore, the trial court properly granted defendants Johnson and Brown summary disposition pursuant to MCR 2.116(C)(7) on the ground of governmental immunity.

The remaining defendants do not qualify as "highest executive officials." Gach was the acting

superintendent of MIPC, a single facility, and would not have broad jurisdiction. Further, prison wardens are not entitled to absolute immunity. *Marley v Huron Valley Men's Facility Warden,* 165 Mich App 78, 82; 418 NW2d 430 (1987).

> Lower level officials, employees, and agents are immune from tort liability only when they are
> 1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority;
> 2) acting in good faith; and
> 3) performing discretionary, as opposed to ministerial acts. [*Ross, supra,* pp 633-634.]

A discretionary act is one which requires personal deliberation, decision and judgment. *Ross, supra,* p 634. It involves significant decision-making on whether to engage in a particular activity and how best to carry it out. A ministerial act might entail minor decision-making, but essentially involves the execution of a decision where the individual has little or no choice. *Ross, supra,* pp 634-635. In determining whether acts are discretionary or ministerial, we must look to the specific acts complained of, rather than to the general nature of the activity. *Canon v Thumudo,* 430 Mich 326, 334; 422 NW2d 688 (1988).

Plaintiff argues that defendants were performing ministerial, as opposed to discretionary, acts and, thus, are not entitled to governmental immunity. He cites MCL 791.264; MSA 28.2324, which authorizes the assistant director in charge of the bureau of penal institutions to classify prisoners and, subject to the director's approval, promulgate regulations under which a classification committee in each institution is organized. Both parties point to 1979 AC, R 791.4401(1), which provides:

Each resident shall be classified according to his or her behavior, attitude, circumstances, and the likelihood that the trust implicit with the level of security prescribed will be honored. A security classification is not a punitive or disciplinary action on the part of the department. Residents shall be classified according to security requirements necessary for their protection, the safety of others, the protection of the general public, prevention of escape, and maintenance of control and order.

Plaintiff alleges that this rule places defendants in a nondiscretionary role for prisoner classification, because the rule specifies the considerations for classifying prisoners and, thus, carrying out the rule is ministerial.

However, evaluating such factors as behavior, attitude, circumstances, etc., in determining whether a specific inmate qualifies for a program would be a decisional process. The rule does not provide a quantitative test where someone need only total up a score to see if an inmate "passes" or "fails." It is rather a matter of qualitative analysis regarding each inmate's circumstances, which would require significant decision-making. In *Williams v Horton,* 175 Mich App 25, 29-31; 437 NW2d 18 (1989), the defendant, a delinquency services worker with the Department of Social Services, also had rules regarding placement and supervision of the minors she was responsible for placing, including plaintiff's decedent. In determining a proper placement, the defendant had to consider and weigh several factors, including the goal of the intensive treatment program, the child's history, state policies, the suitability of local and available placement openings, and the need for care in a structured setting. *Id.,* pp 29-30. This Court determined that the placement of plaintiff's decedent constituted a discretionary ac-

tivity "because it involved the making of decisions and assessments requiring a high degree of personal deliberation and judgment" rather than being "limited merely to fulfilling, by way of routine and unthinking obedience, the order to 'place the child' in this case." *Id.,* p 31. See also *Walker v Gilbert,* 160 Mich App 674, 679-680; 408 NW2d 423 (1987), lv den 430 Mich 895 (1988).

We believe, in the instant case, that the decision to transfer the inmates to the minimum security facility was similarly a matter involving a high degree of personal deliberation, taking into account the numerous factors provided by the rules. The rules did not specify what weight should be given to each factor or how they should be considered. Thus, we find that the placement of the inmates was a discretionary function. Therefore, the trial court properly granted summary disposition to defendants Gach, Koehler, Wells and Buchkoe pursuant to MCR 2.116(C)(7) on the ground of governmental immunity.

Plaintiff also claims that the trial court erred in granting summary disposition to defendants Oxenford and Sharland, the guards on duty at Mangum Farms when the escape occurred, on the ground that they owed no duty to plaintiff's decedent and, thus, plaintiff had failed to state a cause of action upon which relief could be granted. MCR 2.116(C)(8). A motion brought under MCR 2.116(C)(8) tests the legal sufficiency of the claim. *Markis v Grosse Pointe Park,* 180 Mich App 545, 551; 448 NW2d 352 (1989). It must be decided on the pleadings alone, and all well-pled facts and reasonable inferences drawn therefrom are taken as true. *Id.* The motion can only be granted if the claim is so clearly unenforceable as a matter of law that no factual development could establish the claim and justify recovery. *Id.*

To establish a prima facie case of negligence, a plaintiff must prove: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached the duty; (3) that the defendant's breach of duty was a proximate cause of the plaintiff's damages; and (4) that the plaintiff suffered damages. A duty is a legally recognized obligation to conform to a particular standard of conduct towards another. Whether a duty exists is a question of law for the court. *Sierocki v Hieber,* 168 Mich App 429, 433; 425 NW2d 477 (1988).

The general rule is that there is no duty to protect an individual who is endangered by the conduct of a third person. *Id.* In determining whether a legal duty should be imposed, the trial court should balance the societal interests involved, the severity of the risk, the burden upon the defendant, the likelihood of occurrence, and the relationship between the parties. A duty of reasonable care may arise where one stands in a special relationship with either the victim or the person causing the injury. *Id.,* p 434.

Plaintiff argues that a special relationship was present between defendant guards and the escaped inmates, because of the control the guards exercised over the inmates. Plaintiff likens the situation to that where this Court has imposed a duty of reasonable care on psychiatrists who determine, or by the standard of their profession should have determined, that a patient poses a serious danger of violence to a readily identifiable person. *Sierocki, supra,* p 434; *Hinkelman v Borgess Medical Center,* 157 Mich App 314, 321-322; 403 NW2d 547 (1987), lv den 428 Mich 905 (1987). See also *Duvall v Goldin,* 139 Mich App 342; 362 NW2d 275 (1984), lv den 422 Mich 976 (1985) (duty imposed on defendant physician who allegedly failed to properly diagnose and treat his epileptic patient and

failed to inform the patient not to operate an automobile). Such a duty has been found based on the defendant's special relationship of control over the person causing the harm. *Hinkelman, supra,* p 322.

However, generally a police officer does not owe a duty to any one individual. A police officer's duty is generally owed to the public and not to a specific individual. *Markis, supra,* p 558; *Eichhorn, supra,* p 545. Only where a special relationship between the parties exists which the law recognizes and defines as including a duty to conform to a particular standard of conduct toward another will a duty be recognized. *Eichhorn, supra,* p 546.

We find the situation of prison guards more analogous to that of police officers, where a duty is owed generally to the prison population and to society, than to the situation involving psychiatrist/physician-patient relationships where special one-to-one relationships have developed and where the psychiatrist or physician has control of the treatment of the specific patient. Here, the two defendant guards were responsible for watching the general prison population of approximately ninety inmates, and no particular special relationship was alleged between defendant guards and the escaped inmates that was different from the relationship between the guards and the general inmate population. Thus, we decline to find that a special relationship existed between defendant guards and the escaped inmates. Therefore, the trial court properly granted defendants Oxenford and Sharland summary disposition pursuant to MCR 2.116(C)(8) on the ground that they owed no duty to plaintiff's decedent.

Affirmed.