1 So.2d 393

**LOUISVILLE & N. R. CO. v. GRISWOLD.**

**6 Div. 812.**

Supreme Court of Alabama.

March 27, 1941.

Chas. H. Eyster, of Decatur, and Gibson & Gibson, of Birmingham, for appellant.

Taylor & Higgins and Fred G. Koenig, Jr., all of Birmingham, for appellee.

BOULDIN, Justice.

Two police officers, in line of duty, went upon the tracks of a railroad company in the night-time. A freight train, headed south, was standing on the track for south bound trains. The police officers walked alongside the train, and stopped between the tracks back of and near the caboose of the standing train, to question a negro. All this was in line of duty. While in this position, the headlight of a switch engine appeared, bearing down on the standing train on the same track with such apparent speed as to threaten a collision. At this moment the flagman appeared on the rear of the caboose, and called: "Look out, jump,! He is going to hit us!" The officers ran from the scene in a direction away from the line of tracks. One of them ran or fell into Village Creek, whose channel was near the tracks, receiving temporary personal injuries for which he sued the railroad company, and recovered judgment.

There was no actual collision. The switch engine, drawing cars, came to a full stop before reaching the caboose of the standing train.

The creek and channel were obscured by weeds. There was a break in the bank at the point where plaintiff fell in. The officers had flash-lights. Whether they were turned on while standing on the track or while running does not appear. The headlight of the approaching engine shed light on the scene, but tended to blind the officers. The brakeman, who gave the alarm, at once fled for his own safety, running south alongside the standing train.

Thus far, we have outlined the evidence from the viewpoint of the plaintiff, either undisputed or supported by tendencies of the evidence.

The evidence for defendant disclaimed any knowledge of the presence of the officers at the time; asserted that the alarm was given for the protection of other trainmen in the caboose.

In considering whether the affirmative charge was due defendant, we accept the view of plaintiff that, because of the position of the officers and the headlight of the approaching engine, there was ground for reasonable inference that the flagman did see them; discovered their position of peril from a threatened collision, and gave the warning for the benefit of all persons endangered thereby.

Admittedly the flagman was familiar with the conditions at this point; knew Village Creek was near-by. There is no evidence he knew the direction taken by the officers, nor that plaintiff was heading toward a break in the bank where he fell in. There is conflict in the evidence touching the distance plaintiff ran before reaching the danger spot. His evidence estimates the distance at 10 to 15 feet.

A map with supporting evidence for defendant is sent up disclosing measurements of 30 to 40 feet. We should note plaintiff's answers to statutory interrogatories estimated the distance at 46 feet from the center of the right of way.

106

The counts of the complaint on which the cause was tried were based on causal negligence after discovery of peril—or reasonably apparent peril.

One or more of them proceed on the theory that plaintiff was in a position of peril or apparent peril from a threatened collision, that such peril was discovered by the flagman, and that he "negligently directed and instructed plaintiff to leap or jump."

It is not questioned that the warning given was appropriate to inform plaintiff of danger from a threatened collision, that he might remove himself from the zone of such danger.

The plaintiff's theory of liability may best be stated in the language of the brief for appellee, saying: "The servant who saw the plaintiff testified that he himself ran down the railroad tracks when he saw that a collision was imminent. He said that he *knew* that Village Creek was just across the tracks from where plaintiff was standing. He said that he did not run in that direction, but that he ran in another direction *where he knew it was safe.* * * * When he called his warning, plaintiff was facing in the direction where the creek was hidden behind tall weeds. Certainly it was a question for the jury to decide whether the servant in giving his order or instruction to the plaintiff to jump, was negligent in not warning the plaintiff about the creek, a way which he knew not to be safe; and, independently of that, whether the servant was negligent, having undertaken to warn the plaintiff, in not making known to him a safe way of escape. It was for the jury to decide."

Quite elaborate briefs, presenting numerous principles of law, are before us.

Only a few elementary principles, in our opinion, need to be applied.

■ Railroad tracks and right of way, in the absence of special conditions, are deemed private property as respects third persons entering thereon. Ordinarily such third person is a trespasser. An officer of the law, acting in the line of duty, is not a trespasser. Neither is he an invitee to whom the company owes a duty to keep premises in a reasonably safe condition. He is deemed a licensee, free to enter on the premises as they are, caring for his own safety as for any hazards on the premises, such as the channel of a stream.

There is no primary duty on the company to conserve his safety, night or day, as against such hazards. Alabama Great Southern R. Co. v. Cummings, 211 Ala. 381, 100 So. 553, 33 A.L.R. 439; Scoggins v. Atlantic & G. P. Cement Co., 179 Ala. 213, 214, 60 So. 175.

These principles are not controverted, but are impliedly recognized in counts based on negligence after discovery of peril.

■ We can not accept the view that the flagman, under any phase of the evidence, is chargeable with negligence in failing to give a further warning lest the officer run into the creek's channel. The danger before him at the moment was a threatened collision. If he saw these officers at all, there is no evidence he knew or should have known they would run into another and different hazard. No such hazard existed when he gave the warning and fled. The injury was from a hazard arising from the movements of the officers themselves, after the warning. The flagman can not be charged with a duty to anticipate their running into a hazard, from a condition of the premises, it was their duty to look out for. There is no more reason to charge him with a duty to follow and safeguard their movements, than to hold it their duty to follow his movements in seeking safety.

Defendant was due the affirmative charge on the whole case as requested in writing.

Other questions need not be considered.

Reversed and remanded.

GARDNER, C. J., and THOMAS and FOSTER, JJ., concur.