The issue in this case is whether, under the facts presented, Alabama law imposes an affirmative duty that subjects a homeowner to liability if she fails to warn a responding police officer that he may be in danger from a gunman who is inside the residence with the homeowner. The trial court held that, under the circumstances, the homeowner had no duty to warn the officer, and it directed a verdict for the defendant. We affirm.
Viewed in the light most favorable to the plaintiff, Roosevelt Finley, the evidence tended to show the following: In March 1991, Marquette Patterson refused the request of his grandmother, Annie Pearl Patterson, to leave her home, and then he threatened to take money from her. He loaded a shotgun, threatened to kill several family members, shot at one family member, and threatened to shoot at the police if they came.
The Camp Hill Police Department received a report of Marquette's actions and a request for assistance. Roosevelt Finley, the chief of police of Camp Hill, responded to the domestic disturbance dispatch about Marquette. The dispatcher informed Officer Finley that a gun was possibly involved. Another officer arrived on the scene and radioed that all seemed quiet, at least from the outside of the residence. Ms. Patterson's son, Marquette's uncle, who had been at the residence at the time of the disturbance, met Finley and approached the house with him.
Officer Finley had dealt with Marquette numerous times before. Ms. Patterson had always responded when Finley knocked at the door to see Marquette. Marquette had always calmed down after Finley talked to him.
This time was different. When Finley knocked on the door, no one responded. When Finley checked the door, he found it chained from the inside. When Finley called out, no one answered. Ms. Patterson's son, however, insisted that Marquette was inside.
As Finley walked off the porch, three shotgun blasts came through the window and struck him. There was an exchange of gunfire, and the police launched tear gas into the house. A small fire broke out. The shooting from inside the house stopped. The police entered. Marquette was dead from a self-inflicted gunshot wound. Ms. Patterson had died next to Marquette, in a kneeling position, possibly from smoke inhalation.
Finley sued Ms. Patterson's estate, seeking damages on theories of negligence and wantonness. The trial court directed a verdict for the estate explaining that the evidence was purely speculative as to whether Ms. Patterson could have warned Officer Finley of the danger posed by Marquette.
On appeal, Finley argues that the directed verdict was improper, contending that Ms. Patterson, as the premises owner, had a duty to warn him, as a police officer, of the danger posed by Marquette. Finley argues that Ms. Patterson's duty was created by what he considers to be a special relationship that existed or special circumstances surrounding Marquette's shooting of Finley.[1] For the directed verdict to be proper, Finley must have failed to present substantial evidence *Page 828 
of facts giving rise to a duty on the part of Ms. Patterson to protect him. See Teague v. Adams, 638 So.2d 836, 837 (Ala. 1994); Rule 50(a), Ala.R.Civ.P.
The general rule in Alabama is that "a person has no duty to protect another from criminal acts of a third person." Moye v.A.G. Gaston Motels, Inc., 499 So.2d 1368, 1370 (Ala. 1986). There are two exceptions to this rule: (1) the "special relationship" exception; and (2) the "special circumstances" exception. Saccuzzo v. Krystal Co., 646 So.2d 595, 596 (Ala. 1994) (citing Restatement (Second) of Torts § 315 (1965)).
 1. "Special Relationship" Exception
The "special relationship" exception is drawn fromRestatement § 315, which provides:
 "There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
 "(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
 "(b) a special relation exists between the actor and the other which gives to the other a right to protection."
(Emphasis added.) The relationship between Ms. Patterson (the "actor") and Marquette (the "third person") was that of grandmother and adult grandson. This familial relationship imposed no duty on the elderly Ms. Patterson to control Marquette. See, e.g., Bell Hudson, P.C. v. Buhl Realty Co.,185 Mich. App. 714, 462 N.W.2d 851 (1990) (holding familial relationship insufficient to impose a duty on defendant to protect plaintiff from wrongful acts of defendant's family member).
The relationship between Ms. Patterson (the "actor") and Finley (the "other") was that of citizen and police officer. This relationship is insufficient to create a right in Finley, the police officer, to require Ms. Patterson, the citizen, to protect him. In Young v. Huntsville Hospital, 595 So.2d 1386,1388-89 (Ala. 1992), we held that the relationship between a hospital and a sedated patient gave rise to a right in the sedated patient to have the hospital protect her from a sexual assault. In Thetford v. City of Clanton, 605 So.2d 835, 838-40
(Ala. 1992), we held that an innkeeper had the duty to protect a guest, a battered wife who had informed the innkeeper that she was fleeing her husband, from unauthorized access to her room by her husband. In both Young and Thetford, the plaintiffs were completely dependent upon the defendants for protection. Unlike the sedated patient or the battered and fearful wife, Finley, the chief of police, was an armed, trained law enforcement officer with years of experience in dealing with domestic disputes and violent criminals. It cannot be maintained that Officer Finley was dependent on the elderly Ms. Patterson for protection. Accordingly, the "special relationship" exception did not impose a duty on Ms. Patterson to protect Finley from the criminal acts of the third party, Marquette.[2] *Page 829 
 2. "Special Circumstances" Exception
The second exception to the general rule that a person has no duty to protect another from the criminal acts of a third party is the "special circumstances" exception. It arises only in the rare case when the person "know[s] or [has] reason to know that acts are occurring or [are] about to occur on the premises that pose imminent probability of harm to an invitee." Nail v.Jefferson County Truck Growers Ass'n, Inc., 542 So.2d 1208,1211 (Ala. 1988) (quoting Cornpropst v. Sloan, 528 S.W.2d 188,197-98 (Tenn. 1975)). In the overwhelming majority of cases presenting the question, we have not found special circumstances that give rise to a duty to protect. See, e.g.,Ortell v. Spencer Companies, 477 So.2d 299 (Ala. 1985) (holding that 8 incidents of assault, theft, robbery, or burglary on the premises and 80 similar incidents within a 2-block area within the prior 3 years did not constitute "special circumstances" giving rise to a duty to protect); Henley v. Pizitz Realty Co.,456 So.2d 272 (Ala. 1984) (holding that 1 battery, 6 breakings and enterings of cars, 2 robberies, and 7 thefts in a parking deck within the prior 10 years did not constitute "special circumstances" giving rise to a duty to protect).
However, Nail, supra, is that rare case in which this Court found special circumstances giving rise to a duty to protect — a duty on the part of the operator of a farmers' market to take reasonable steps to protect a threatened tenant who was an invitee. The special circumstances were that the operator was aware that for several weeks hostility had grown between two tenants at the farmers' market and that the operator had received two specific warnings that an outbreak of violence was imminent. Nail, 542 So.2d at 1212-13.[3]
Finley argues that special circumstances are established in this case by evidence that Ms. Patterson knew that Marquette had the shotgun and Knew that he had made a statement about shooting the police. Thus, Finley argues, Ms. Patterson must have known that harm to Finley was imminent. For one to have a duty to warn, however, one must have a reasonable opportunity to warn. See Richard C. Tinney, Liability to Police — Owner orOccupant, 30 A.L.R.4th 81, 97 (1984) (citing Armstrong v.Mailand, 284 N.W.2d 343 (Minn. 1979)). Finley offered evidence that Ms. Patterson, although she was over 80 years of age, could see, hear, walk, and talk; and he argues that she could have felt safe in warning him from the house because Marquette had never harmed her. While there is significant evidence rebutting the inference that Ms. Patterson's prior relationship with Marquette would allow her to feel safe in warning Finley on the day of the shooting (e.g., Marquette's threat to take Ms. Patterson's money, his refusal to leave her home, his shooting at a family member, etc.), there was no evidence of the ultimately fatal situation that existed inside Ms. Patterson's home when Finley knocked on the door. Any conclusion that Ms. Patterson had, or *Page 830 
did not have, a reasonably safe opportunity to warn Finley would be mere speculation. "Evidence . . . which affords nothing more than mere speculation, conjecture, or guess is insufficient to warrant the submission of a case to the jury."Sprayberry v. First Nat'l Bank, 465 So.2d 1111, 1114 (Ala. 1984). Thus, the evidence did not indicate sufficient special circumstances to impose a duty on Ms. Patterson to warn Finley.[4]
The trial court properly directed a verdict against Finley.
The judgment of the trial court is affirmed.
AFFIRMED.
HOOPER, C.J., and MADDOX, ALMON, and SHORES, JJ., concur.
COOK, J., concurs in the result.
HOUSTON, KENNEDY, and BUTTS, JJ., dissent.
[1] Finley also argues, separately, that Ms. Patterson should be liable under two additional theories: (1) the traditional premises-owner liability theory; and (2) the affirmative-conduct-of-premises owner theory. Finley, a licensee under the holding of Louisville N.R.R. v. Griswold,241 Ala. 104, 106, 1 So.2d 393, 395 (1941), cannot recover under the traditional premises-owner theory because the general rule that a person is not liable for the criminal acts of third parties applies to premises owners like Ms. Patterson. See Moyev. A.G. Gaston Motels, Inc., 499 So.2d 1368 (Ala. 1986) (holding that premises owner was not liable to invitee who was shot by third party where special circumstances did not exist). Likewise, Finley cannot recover under the affirmative-conduct theory because he does not allege that Ms. Patterson took any affirmative action. Cf. Orr v. Turney, 535 So.2d 150 (Ala. 1988) (holding that premises owner owed higher duty of reasonable care to visitor, instead of lower duty to licensee, where owner's affirmative conduct of running with a pan of hot grease created a risk to a visiting child).
[2] We note that it would be peculiar to impose a duty on a person to warn a police officer, like Finley, of the very dangers inherent in police work and which the officer voluntarily assumed as part of his duties. See Sprouse v. Belcher Oil Co.,577 So.2d 443, 444 (Ala. 1991) (stating that assumption of the risk requires knowledge of the danger, appreciation of the danger, and voluntary exposure to the danger). This Court has recognized "the harsh reality that crime can and does occur despite society's best efforts to prevent it." Moye v. A.G.Gaston Motels, Inc., 499 So.2d 1368, 1372 (Ala. 1986). It is the police officer's courage and sense of duty that society depends on for protection against violent criminals. The debt society owes its law enforcement officers, however, is not responsibly laid on property owners, by this Court's invention of a new tort action.
We also note that other jurisdictions have addressed this issue and have concluded that a premises owner cannot be held liable for injuries sustained by a police officer when the officer is acting in the line of duty. See, e.g., Lenthall v.Maxwell, 138 Cal.App.3d 716, 188 Cal.Rptr. 260 (1982) (holding police officer who was shot by occupier of premises could not recover from premises owner for injuries the officer should have reasonably expected to sustain while engaged in the line of duty); Fancil v. Q.S.E. Foods, Inc., 60 Ill.2d 552,328 N.E.2d 538 (1975) (holding premises owner had no duty to protect when the risk the police officer was subjected to was one inherent in that occupation); Koop v. Bailey,502 N.E.2d 116 (Ind.App. 1986) (holding homeowners not liable to member of police SWAT team who was shot by the homeowners' son while the officer responded in his professional capacity); Chapman v.Craig, 431 N.W.2d 770 (Iowa 1988) (holding tavern owner not liable for injuries sustained when intoxicated patron assaulted a police officer); Hannah v. Jensen, 298 N.W.2d 52 (Minn. 1980) (holding owner of bar not liable for injuries to officer caused by a scuffle with a person the owner wanted removed from the premises); Wawrzyniak v. Sherk, 170 A.D.2d 972, 566 N.Y.S.2d 138
(1991) (holding officer unable to recover for injuries caused by the arrestee's mother when she lunged toward officer who was arresting her son, because apprehension of suspects is within the scope of police duties); Kithcart v. Feldman,89 Okla. 276, 215 P. 419 (1923) (holding officer who was shot by employee of a hotel while he was attempting to make an arrest was unable to recover for injuries from hotel owner); Cullivanv. Leston, 43 Or. App. 361, 602 P.2d 1121 (1979) (holding proprietor of a tavern was not liable to officer who sustained injuries caused by a patron while the officer was attempting to make an arrest); Carson v. Headrick, 900 S.W.2d 685 (Tenn. 1995) (holding wife did not have a duty to warn a police officer, who was shot while escorting her home, that her husband had threatened to kill any police officer).
[3] We note that in Nail, 542 So.2d at 1211, we held, applying the "scintilla rule" of evidence, that there was sufficient evidence for a jury to find an imminent probability of harm. Alabama has since abandoned the scintilla rule in favor of the significantly higher standard of "substantial evidence." See Ala. Code 1975, § 12-21-12; Brown v. Gamble, 537 So.2d 476, 477
(Ala. 1989) (stating that cases filed after June 11, 1987, are subject to the substantial evidence rule instead of the scintilla rule).
[4] The dissent relies on an Illinois case, Williams v. Wiewel,36 Ill. App.3d 478, 344 N.E.2d 34 (1976), for its conclusion that because of Ms. Patterson's failure to warn, the issue whether her estate should be held liable for Marquette's shooting of Finley was for the jury. In Williams, 36 Ill. App. 3d at 480,344 N.E.2d at 36, however, it was not the criminals (burglars) who shot the law enforcement officer, but another person called there by the defendant to help catch the burglars, without the defendant's having warned either that person or the officer of the other's presence. It should also be noted that the Illinois Supreme Court has held that, because "[t]he danger of being ambushed by criminals lurking in poorly illuminated areas, in shadows or behind objects is a risk inherent in the occupation [of a law enforcement officer]," a premises owner cannot be held liable for dangerous conditions on the premises. Fancil v.Q.S.E. Foods, Inc., 60 Ill.2d 552, 558, 328 N.E.2d 538, 541
(1975).