The appellants are the defendants Alabama Department of Corrections; Edwin Henry, the warden of the Frank Lee Youth Center; and Deborah Haynes and Christopher Thomas, correctional officers at the Frank Lee Youth Center. Pursuant to Rule 5, Ala.R.App.P., we granted permission for these defendants to appeal the interlocutory order of the trial court denying their motion for summary judgment. Their motion for summary judgment was grounded on their claims of absolute and state-agent immunity and their denial of any duty to the plaintiff to protect her from the criminal acts of a third person.[1] We hold that the trial court erred in denying the defendants' summary judgment motion. We reverse and remand with instructions.
Helen Thompson sued the Alabama Department of Corrections for its negligence in causing or allowing the escape of inmate Jessie Bennett from the J.F. Ingram Technical College (the "College") at the Frank Lee Youth Center. Thompson alleged that, after Bennett escaped, he broke into her home, assaulted her, rendered her unconscious, and stole her automobile. She demanded compensatory and punitive damages.
Thereafter, Thompson amended her complaint to add Warden Henry and correctional officers Haynes and Thomas as defendants. Thompson alleged that Henry, Haynes, and Thomas negligently or wantonly "allowed Jessie Bennett to escape from confinement at [the] College." She alleged also that Henry and Haynes negligently or wantonly selected Bennett "to receive training at [the] College." Thompson further alleged that Henry, Haynes, and Thomas negligently or recklessly failed "to properly train and/or supervise the Department of Corrections employees assigned to guard and detain state prisoners at [the] College."
In answering the amended complaint, the Department of Corrections, Henry, Haynes, and Thomas asserted various *Page 1018 
affirmative defenses including state-agent immunity and absolute immunity. They asserted also that they "owed no special duty to [Thompson] or maintain[ed] [no] special relationship to her."
These defendants then moved for summary judgment on the grounds of absolute immunity, state-agent immunity, and absence of any duty to Thompson to protect her from the criminal acts of Bennett. They asserted also that Thompson failed to "allege sufficient facts to establish proximate cause between any act of the Defendants and any resulting injury or damage to [Thompson]." They submitted affidavits and documents in support of their summary judgment motion. Warden Henry's affidavit stated:
 "Correctional Officer I's and Sergeants have no involvement with the classification procedure for inmates. Inmate Bennett was assigned to Draper Correctional Facility and classified by officials at Draper Correctional Facility. Inmate Bennett was assigned by officials at Draper Correctional Facility to take classes at J.F. Ingram. The classification officials at Frank Lee Youth Center had no involvement with Inmate Bennett's classification."
In their respective affidavits, Warden Henry and correctional officers Haynes and Thomas all stated that "I do not know Helen Thompson and had no prior knowledge that Inmate Bennett might harm her." Thompson opposed the summary judgment motion and submitted documents and depositions excerpts in support of her opposition.
The trial court denied the summary judgment motion and certified the case as appropriate for a permissive appeal. The Department of Corrections, Henry, Haynes, and Thomas petitioned this Court for permission to appeal the denial of their summary judgment motion, and we granted that petition.
On June 3, 1983, the Commissioner of the Department of Corrections adopted Administrative Regulation no. 305:
 "Wardens and Directors where vocational schools are located will
". . . .
 "C. Notify the education facility Director that no vehicle other than the vehicle being repaired or the maintenance vehicle will be allowed inside the area.
 D. Instruct each correctional officer assigned to education areas that his duties will be as follows:
". . . .
 "(5) No vehicles will be permitted entry in these areas other than the vehicles being repaired or maintenance vehicles."
Although Warden Henry knew Administrative Regulation no. 305 before he became the warden of the Frank Lee Youth Center, he continued the previous warden's unwritten standard operating procedures. These required:
1. That any patron of the College register at the gate;
 2. That a correctional officer search the patron's vehicle before it entered the College grounds;
 3. That a correctional officer escort the patron and vehicle to the various shops for items to be loaded onto the vehicle;
 4. That a correctional officer search the vehicle again at the gate before the vehicle left the grounds;
 5. That all containers on the vehicle be visually searched, inside and outside;
 6. And that all items and containers on the vehicle be repositioned or unloaded if necessary to allow access for a thorough search. *Page 1019 
Although correctional officers Haynes and Thomas both knew Administrative Regulation no. 305 and the unwritten standard operating procedures, they purported to follow only the unwritten standard operating procedures.
Bennett, an inmate at Draper Correctional Facility, attended the College. In order to escape while at the College, Bennett hid inside one of several cabinets built for a patron. Another inmate assisted Bennett in escaping by loading the cabinets, with Bennett inside one, into the back of the patron's truck in such a manner that the cabinets could not be fully opened and searched without being removed from the truck.
At the gate, correctional officer Thomas climbed into the back of the patron's truck, stepped between the cabinets, and searched the cabinets by opening each cabinet partially, putting his arms inside each cabinet, and feeling inside the cabinet. He did not reposition or unload the cabinets to allow a thorough visual search, and he did not feel Bennett inside the cabinets. Thomas also searched the interior of the patron's truck. Correctional officer Haynes supervised Thomas's search of the truck and cabinets.
Shortly after the truck left the College grounds, the patron telephoned the College to report that a black inmate had jumped from the back of the patron's truck in a certain area of Montgomery. The patron reported that he had notified the Montgomery Police Department, officers of which were in pursuit of the inmate, Bennett. At some point during his escape, Bennett broke into Thompson's house, assaulted Thompson, rendered her unconscious, and stole her automobile. Bennett was captured approximately one hour and twenty minutes after the patron reported that Bennett had jumped from the truck.
 "Summary judgment is appropriate only when `there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.' Rule 56(c)(3), Ala.R.Civ.P., Young v. La Quinta Inns, Inc., 682 So.2d 402 (Ala. 1996). A court considering a motion for summary judgment will view the record in the light most favorable to the nonmoving party, Hurst v. Alabama Power Co., 675 So.2d 397
(Ala. 1996), Fuqua v. Ingersoll-Rand Co., 591 So.2d 486
(Ala. 1991); will accord the nonmoving party all reasonable favorable inferences from the evidence, Fuqua, supra, Aldridge v. Valley Steel Constr., Inc., 603 So.2d 981 (Ala. 1992); and will resolve all reasonable doubts against the moving party, Hurst, supra, Ex parte Brislin, 719 So.2d 185 (Ala. 1998).
 "An appellate court reviewing a ruling on a motion for summary judgment will, de novo, apply these same standards applicable in the trial court. Fuqua, supra, Brislin, supra. Likewise, the appellate court will consider only that factual material available of record to the trial court for its consideration in deciding the motion. Dynasty Corp. v. Alpha Resins Corp., 577 So.2d 1278 (Ala. 1991), Boland v. Fort Rucker Nat'l Bank, 599 So.2d 595 (Ala. 1992), Rowe v. Isbell, 599 So.2d 35 (Ala. 1992)."
Ex parte Rizk, 791 So.2d 911, 912-13 (Ala. 2000).
We first address the issue of immunity of the Department of Corrections. Article I, § 14, Alabama Constitution of 1901, provides that "the State of Alabama shall never be made a defendant in any court of law or equity." "[A] Department, as an agency of the State, is immune from the tort liability. . . ." Ex parte Alabama Dep't of ForensicSciences, 709 So.2d 455, 457 (Ala. 1997). Thus, the trial court erred *Page 1020 
in denying a summary judgment to the Department of Corrections.
We next address the issue of state-agent immunity for the defendants Henry, Haynes, and Thomas. "Ex parte Cranman, 792 So.2d 392 (Ala. 2000), recounts the evolution of State-agent immunity . . .," Ex parte Rizk, 791 So.2d at 913, and restates the law on that topic:
 "We therefore restate the rule governing State-agent immunity:
 "A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
"(1) formulating plans, policies, or designs; or
 "(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
"(a) making administrative adjudications;
"(b) allocating resources;
"(c) negotiating contracts;
 "(d) hiring, firing, transferring, assigning, or supervising personnel; or
 "(3) discharging duties imposed on a department or agency by statute, rule, or regulation insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
 "(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
 "(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
 "Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
 "(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
 "(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."
Ex parte Cranman, 792 So.2d 392, 405 (Ala. 2000) (emphasis in original). "This restatement was adopted by our decisions in Ex parte Rizk, [supra,] and Ex parte Butts, 775 So.2d 173 (Ala. 2000)." Ex parte Blankenship,806 So.2d 1186, 1189 (Ala. 2000).
Warden Henry and correctional officers Haynes and Thomas argue that they are entitled to state-agent immunity under paragraphs (1), (2)(d), or (3) of the restatement in Cranman. Thompson argues that these defendants are not entitled to state-agent immunity because, she says, "their actions were willful, directly violated lawful state regulations and were unrelated to the formation or application of governmental policy." Appellee's brief, p. 9.
Although Warden Henry "formulat[ed] plans, policies, or designs" for guarding inmates attending the College, he knowingly violated Administrative Regulation no. 305 by maintaining the unwritten standard operating procedures of permitting patrons' vehicles on the grounds there. Thus, Warden Henry's "formulat[ion of] plans, policies, or designs" was a willful violation of an administrative regulation or was an act beyond his authority. *Page 1021 
Accordingly, he is not entitled to state-agent immunity under paragraph (1) of the restatement in Cranman, 792 So.2d at 405. The record is devoid of evidence that Haynes or Thomas "formulat[ed] plans, policies, or designs." Thus, Haynes and Thomas are not entitled to state-agent immunity under paragraph (1) of the restatement in Cranman, 792 So.2d at 405.
Although Henry's duties as the warden of the Frank Lee Youth Center required him to exercise "his . . . judgment in the administration of a department or agency of government, including . . . hiring, firing, transferring, assigning, or supervising," Ex parte Cranman, 792 So.2d at 405, correctional officers at the College, his instruction to his correctional officers to follow his unwritten standard operating procedures was a willful violation of an administrative regulation or was an act beyond his authority. Thus, Warden Henry is not entitled to state-agent immunity under paragraph (2)(d) of the restatement inCranman, 792 So.2d at 405. The record is likewise devoid of evidence that Haynes or Thomas "hir[ed], fir[ed], transferr[ed], [or] assign[ed] . . . personnel." Although Haynes was Thomas's supervisor, the record is devoid of evidence that Haynes's supervisory responsibilities were part of her "exercising . . . her judgment in the administration of a department or agency of government," Ex parte Cranman, 792 So.2d at 405. Moreover, Haynes knew that the unwritten standard operating procedures of permitting patrons' vehicles to enter the grounds of the College and of searching vehicles entering and exiting the grounds there violated Administrative Regulation no. 305. Thus, in supervising Thomas and permitting him to allow a patron's vehicle to enter the College grounds for a purpose other than to be repaired there, Haynes willfully violated a written regulation. Indeed, Haynes failed even to require Thomas to obey the safeguards of the unwritten standard operating procedures for searching departing vehicles. Therefore, Haynes acted willfully or beyond her authority. Accordingly, neither Haynes nor Thomas is entitled to state-agent immunity under paragraph (2)(d) of the restatement inCranman, 792 So.2d at 405.
Nor are Warden Henry and correctional officers Haynes and Thomas entitled to state-agent immunity under paragraph (3) of the restatement in Cranman, 792 So.2d at 405. In knowingly violating Administrative Regulation no. 305 by purporting to follow the unwritten standard operating procedures, and indeed in knowingly violating the unwritten standard operating procedures themselves, these defendants were not "discharging duties imposed on a department or agency by statute, rule or regulation, insofar as the statute, rule or regulation prescribes themanner for performing the duties and the State agent performs the dutiesin that manner." Cranman, 792 So.2d at 405 (emphasis added).
Last, we address the contention of Warden Henry and correctional officers Haynes and Thomas that they are entitled to summary judgment on the ground that they did not owe a duty to Thompson to protect her from the criminal acts of Bennett. Thompson argues that wardens and correctional officers have a special relationship with prisoners placed in their charge and, therefore, Henry, Haynes, and Thomas "had a duty to Mrs. Thompson, even under current general premises liability standards.See Finley v. Patterson 705 So.2d 826, 828 (Ala. 1997)." Appellee's brief, p. 19.
 "`It is the general rule in Alabama that absent special relationships or circumstances, a person has no duty to protect another from criminal acts of a third *Page 1022 
party.' Moye v. A.G. Gaston Motels, Inc., 499 So.2d 1368, 1370 (Ala. 1986)."
Hail v. Regency Terrace Owners Ass'n, 782 So.2d 1271, 1274 (Ala. 1999).
 "The `special relationship' exception is drawn from Restatement [(Second) of Torts] § 315, which provides:
 "`There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
 "`(a) a special relation exists between the actor and
the third person which imposes a duty upon the actor to control the third person's conduct, or
 "`(b) a special relation exists between the actor and
the other which gives to the other a right to protection.'
"(Emphasis added.)"
Finley v. Patterson, 705 So.2d 826, 828 (Ala. 1997). "`Special circumstances' arise when the defendant `knew or had reason to know of a probability of conduct by [a third person] that would endanger the plaintiff.' Saccuzzo v. Krystal Co., 646 So.2d 595, 596 (Ala. 1994), quoting Nail v. Jefferson County Truck Growers Ass'n, Inc., 542 So.2d 1208,1211 (Ala. 1988)." Hail, 782 So.2d at 1274.
Although we have not directly addressed whether a state correctional officer owes a duty to a specific member of the public to protect him or her from the criminal acts of an escaped inmate, see Ryan v. N. H.,831 So.2d 21 (Ala. 2002), other states have directly addressed this question. While the holdings of other state courts are not controlling, they are persuasive on the issue.
In Chivas v. Koehler, 182 Mich. App. 467, 453 N.W.2d 264 (1990), the Michigan Court of Appeals addressed whether a special relationship existed between prison guards and escaped prisoners that could render the prison guards liable to the estate of a police officer killed by escaped prisoners. Chivas, the administrator of the estate of the deceased police officer, had sued the prison guards on duty at the time of the escape for "negligently and wrongfully placing them in a minimum security facility and by failing to carry out proper capture procedures."182 Mich. App. at 470, 453 N.W.2d at 265. The prison guards asserted that they did not owe a duty to the decedent to protect him from the escaped prisoners. The trial court granted the prison guards summary judgment on the ground that they did not owe a duty to the decedent. Chivas appealed. The Michigan Court of Appeals held:
 "To establish a prima facie case of negligence, a plaintiff must prove: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached the duty; (3) that the defendant's breach of duty was a proximate cause of the plaintiff's damages; and (4) that the plaintiff suffered damages. A duty is a legally recognized obligation to conform to a particular standard of conduct towards another. Whether a duty exists is a question of law for the court. Sierocki v. Hieber, 168 Mich. App. 429, 433, 425 N.W.2d 477 (1988).
 "The general rule is that there is no duty to protect an individual who is endangered by the conduct of a third person. Id. In determining whether a legal duty should be imposed, the trial court should balance the societal interests involved, the severity of the risk, the burden upon the defendant, the likelihood of occurrence, and the relationship between the parties. A duty of reasonable care may arise where one stands in a special relationship with either the victim or the person causing *Page 1023 the injury. Id., p. 434, 425 N.W.2d 477.
 "Plaintiff argues that a special relationship was present between defendant guards and the escaped inmates, because of the control the guards exercised over the inmates. Plaintiff likens the situation to that where this Court has imposed a duty of reasonable care on psychiatrists who determine, or by the standard of their profession should have determined, that a patient poses a serious danger of violence to a readily identifiable person. Sierocki, supra, p. 434, 425 N.W.2d 477. Hinkelman v. Borgess Medical Center, 157 Mich. App. 314, 321-322, 403 N.W.2d 547 (1987), lv. den. 428 Mich. 905 (1987). See also Duvall v. Goldin, 139 Mich. App. 342, 362 N.W.2d 275 (1984), lv. den. 422 Mich. 976 (1985) (duty imposed on defendant physician who allegedly failed to properly diagnose and treat his epileptic patient and failed to inform the patient not to operate an automobile). Such a duty has been found based on the defendant's special relationship of control over the person causing the harm. Hinkelman, supra, 157 Mich. App. p. 322, 403 N.W.2d 547.
 "However, generally a police officer does not owe a duty to any one individual. A police officer's duty is generally owed to the public and not to a specific individual. Markis[v. City of Grosse Pointe Park], 180 Mich. App. [545,] p. 558, 448 N.W.2d 352 [(1989)]; Eichhorn [v. Lamphere School District], 166 Mich. App. [527,] p. 545, 421 N.W.2d 230 [(1988)]. Only where a special relationship between the parties exists which the law recognizes and defines as including a duty to conform to a particular standard of conduct toward another will a duty be recognized. Eichhorn, supra, p. 546, 421 N.W.2d 230.
 "We find the situation of prison guards more analogous to that of police officers, where a duty is owed generally to the prison population and to society, than to the situation involving psychiatrist/physician-patient relationships where special one-on-one relationships have developed and where the psychiatrist or physician has control of the treatment of the specific patient. Here, the two defendant guards were responsible for watching the general prison population of approximately ninety inmates, and no particular special relationship was alleged between defendant guards and the escaped inmates that was different from the relationship between the guards and the general inmate population. Thus, we decline to find that a special relationship existed between defendant guards and the escaped inmates. Therefore, the trial court properly granted defendants Oxenford and Sharland summary disposition pursuant to [Michigan Court Rule] 2.116(C)(8) on the ground that they owed no duty to plaintiff's decedent."
182 Mich. App. at 475-76, 453 N.W.2d at 268 (emphasis added).
In Washington v. Lexington County Jail, 337 S.C. 400, 523 S.E.2d 204
(Ct.App. 1999), the South Carolina Court of Appeals addressed whether the trial court erred in granting the Rule 12(b)(6), S.C.R.Civ.P., motion of the defendants the Lexington County jail, the South Carolina Department of Corrections, and the State of South Carolina to dismiss the plaintiff's action on the ground that the defendants did not owe a duty to the plaintiff to protect him from the criminal acts of an escaped prisoner. A state prisoner assigned to the county jail had stolen a car there and had escaped from a work detail near the county courthouse. The escaped prisoner then had broken into the plaintiff's house while the plaintiff was asleep, *Page 1024 
had stolen some of the plaintiff's clothes, and had stolen the plaintiff's car.
The plaintiff sued the defendants for negligence, willfulness, wantonness, and gross negligence in failing to maintain proper control over the prisoner; "failing to prevent [the prisoner] from having access to a vehicle while knowing he was serving a sentence for auto theft"; "failing to properly supervise [the prisoner]"; and "failing to use the degree of care and caution that a reasonably prudent person would have used under the circumstances." 337 S.C. at 404, 523 S.E.2d at 206.
The defendants moved to dismiss the complaint on the ground that they did not owe a duty to the plaintiff to protect him from the criminal acts of an escaped prisoner. The trial court granted the motion to dismiss on the ground "that any duty owed to [the plaintiff] was in fact a public duty owed to the public at large and not to [the plaintiff] individually." Washington, 337 S.C. at 405, 523 S.E.2d at 206. Affirming the order dismissing the plaintiff's action, the South Carolina Court of Appeals stated:
 "Under the public duty rule, public officials are generally not held liable to individuals for negligence in discharging public duties because the duty is owed to the public at large and not to any one individual. Wells v. City of Lynchburg, 331 S.C. 296, 501 S.E.2d 746 (Ct.App. 1998). `The public duty rule is a negative defense which denies an element of the plaintiff's cause of action — the existence of a duty of care to the individual plaintiff. The burden is on the plaintiff to show a duty of care was owed to him.' Rayfield v. South Carolina Dep't of Corrections, 297 S.C. 95, 106-07, 374 S.E.2d 910, 916
(Ct.App. 1988).
 "Our supreme court has held that police officers owe a duty of care to the public at large and not to any one individual. In Wyatt v. Fowler, 326 S.C. 97, 484 S.E.2d 590 (1997), Wyatt sued the sheriff and his deputies in common-law negligence over events arising out of the serving of an arrest warrant. Fowler maintained that he could not be sued in negligence because any duty owed to Wyatt was in fact a duty owed to the public only. Our supreme court agreed and held that the police owe a duty to the public at large and not to any one person individually. Id.
 "We find the situation of guards who maintain custody of inmates analogous to that of police officers who owe a duty generally to society rather than to any one individual. Accordingly, we hold that those who maintain custody of prisoners or inmates do so for the protection of the public and are, therefore, not liable to individuals for damages caused by an escaped inmate under the public duty rule.[2]
 "An exception to the public duty rule, however, is recognized when a plaintiff can establish that the defendant owed him an individual or special duty of care. Bellamy v. Brown, 305 S.C. 291, 408 S.E.2d 219
(1991). This special duty may be created by statute or some other special circumstance. Wells, 331 S.C. at 306, 501 S.E.2d at 752. Generally, however, a person has no duty to protect another from harm inflicted by a third person. Rayfield, 297 S.C. at 101-02, 374 S.E.2d at 913.
 "[2] Other jurisdictions have similarly held that those who maintain custody of prisoners are not liable to individuals for damages caused by an escaped inmate under the public duty rule. See Department of Corrections v. McGhee, 653 So.2d 1091
(Fla.Dist.Ct.App. 1995), aff'd, McGhee v. Department of Corrections, 666 So.2d 140 (Fla. 1996); Chivas v. Koehler, 182 Mich. App. 467, 453 N.W.2d 264 *Page 1025 
(1990); Robinson v. Estate of Williams, 721 F. Supp. 806
(S.D.Miss. 1989); Sebastian v. State of New York, 250 A.D.2d 260, 680 N.Y.S.2d 370 (1998)."
337 S.C. at 405-06, 523 S.E.2d at 206-07 (emphasis added). The South Carolina Court of Appeals affirmed the order of dismissal.
In Price v. Owen, 67 Ga. App. 58, 61, 19 S.E.2d 529, 532 (1942), the Georgia Court of Appeals addressed whether "the warden of a public-works camp, under authority from the Prison Commission" was liable for the alleged negligence of two allegedly intoxicated convicts who drove a truck belonging to the county commission into a motorist's automobile on a public road. Declining to hold the warden liable for the criminal acts of the convicts, the Georgia Court Appeals stated:
 "Our own Supreme Court, in Henderson v. Dade Coal Co., 100 Ga. 568 (28 S.E. 251, 40 L.R.A. 95 [(1897)]), has said: `As a general rule, persons in charge of a State convict, whether their custody and control of him be lawful or otherwise, are not liable in damages for a criminal tort committed by him while at large, although his being at large was by their permission, or because of their negligence in failing to keep him safely confined. Ordinarily, under such circumstances, the convict's wrongful act would be too remote a consequence of his keepers' misconduct in the premises to render them responsible to the person injured. This rule would, of course, be varied if they were in any way connected with the perpetration of the tort, or had reasonable grounds for apprehending that it would be committed.'"
Price, 67 Ga. App. at 63, 19 S.E.2d at 533.
In Cansler v. State, 234 Kan. 554, 675 P.2d 57 (1984), the Supreme Court of Kansas addressed whether the State of Kansas, the Kansas State Penitentiary, the Sheriff of Leavenworth County, the sheriff's department, or the Board of County Commissioners of Leavenworth County were liable to a police officer injured by escaped state prisoners. The Kansas Supreme Court adopted Restatement (Second) of Torts § 319 (1965), which prescribes the "duty of those in charge of persons having dangerous propensities," 234 Kan. at 564, 675 P.2d at 66, in holding that the State of Kansas had a duty to protect the injured police officer from the criminal acts of the escaped prisoners. Alabama has not adopted § 319 of the Restatement (Second) of Torts.
We agree with the Michigan Court of Appeals and the South Carolina Court of Appeals that state correctional officers owe a general duty to the public, not a duty to a specific person, to maintain custody of inmates. Chivas and Washington, supra. A duty of a state correctional officer to a specific person may arise only from a special relationship identified in Finley, 705 So.2d at 828, or the special circumstances identified in Saccuzzo, 646 So.2d at 596.
Thompson did not allege or establish by substantial evidence any special relationship between Warden Henry or correctional officers Haynes or Thomas on the one hand and the inmate Bennett on the other. Thompson asserted and proved only the general relationship between wardens and correctional officers and their assigned inmates: generally that wardens and correctional officers maintain custody of the inmates. Thus, Thompson did not establish the Finley alternative for liability that "(a) a special relation exists between the actor[s] [Henry, Haynes, or Thomas]and the third person [Bennett] which impose[d] a duty upon the actor[s] [Henry, Haynes, or Thomas] to control the third *Page 1026 person's conduct." Finley, 705 So.2d at 828 (emphasis added). Nor did Thompson allege or prove that Henry, Haynes, or Thomas knew of Thompson individually or particularly or knew of any threats against her by Bennett before Bennett escaped and victimized her. Furthermore, Thompson did not allege or prove that Henry, Haynes, or Thomas knew or should have known that Bennett intended to escape, to break into a house, to assault the resident, and to steal the resident's automobile. Consequently, Thompson failed to establish the other alternative Finley special relationship or the Saccuzzo special circumstances that could have imposed a duty on Henry, Haynes, or Thomas to protect Thompson from the criminal acts of Bennett.
The case before us is distinguishable from Luker v. City of Brantley,520 So.2d 517 (Ala. 1987). In Luker, this Court held that a police officer who apprehended an intoxicated driver owed a duty to others on the public ways not to allow the intoxicated driver to continue driving in that intoxicated state. See Tyler v. City of Enterprise, 577 So.2d 876
(Ala. 1991). In the case before us, substantial evidence does not establish that any of the defendants knowingly released a person they knew to pose an immediate danger to virtually anybody he would encounter.
Accordingly, Warden Henry and correctional officers Haynes and Thomas were and are due a judgment grounded on the absence of a duty to Thompson.
For the reasons we have explained, the trial court erred in denying the summary judgment motion filed by the Department of Corrections and the individual defendants Henry, Haynes, and Thomas. Therefore, we reverse the denial and remand this cause to the trial court for entry of a judgment consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Houston, Lyons, Brown, Harwood, and Woodall, JJ., concur.
Moore, C.J., and See and Stuart, JJ., concur in the result.
[1] "This Court has held that a Rule 5[, Ala.R.App.P.,] petition is an appropriate means by which a State agency or employee can seek appellate review of an order denying a claim of immunity." Ex parte Butts,775 So.2d 173, 176 (Ala. 2000).