[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-15025

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 10, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 00-00753-CV-CG

C. C., a minor, by
her parents and natural guardians,
Aretha and Chris Andrews,
R. S. H., a minor,
by her parent and natural guardian,
Betty Jean Murphy,

Plaintiffs-Appellees,

versus

MONROE COUNTY BOARD OF EDUCATION,
MIKE FLOYD,

Defendants,

DARENELL PAYNE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

**(November 10, 2008)**

Before BARKETT and WILSON, Circuit Judges, and POGUE,[*] Judge.

PER CURIAM:

On interlocutory appeal, Darenell Payne, a public school principal at Monroeville Middle School in Monroe County, Alabama, appeals the district court's denial of (1) qualified immunity for violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution by way of 42 U.S.C. § 1983 and (2) state agent immunity for outrage under Alabama law. We reverse and remand as to qualified immunity and affirm as to state-agent immunity.

The facts arise from the alleged sexual molestation and harassment of Appellees C.C. and R.H. (minors) by a teacher, Michael Floyd, under Payne's supervision. On or about January 21, 2000, R.H.'s mother went to the Monroeville Middle School to inform Payne of her daughter's allegations of sexual molestation by a teacher. Payne immediately convened a meeting of the teacher, R.H. and her

[*]Honorable Donald C. Pogue, United States Court of International Trade Judge, sitting by designation.

mother, during which R.H. repeated her accusations. The teacher denied the allegations as well as allegations made by another student. Payne thereafter occasionally looked in on Floyd's classroom and monitored Floyd's interaction with students between classes in the hallways. R.H. alleges that she was further abused by Floyd after the meeting with Payne.

In or about May of 2000, the teacher allegedly sexually molested C.C. in an empty classroom. C.C. unsuccessfully attempted to report the incident to Payne. C.C. told her parents about the incident and they reported the teacher to the police department. On May 8, 2000, Payne learned of C.C.'s complaints against the teacher when the district attorney's office contacted him and the Superintendent. Either on the same day or the next day, the Superintendent suspended the teacher pending an investigation. Since that time, the teacher has not returned to Monroeville Middle School.

The Monroeville Middle School sexual harassment policy (the "Policy") requires, in relevant part, that (1) upon learning of a complaint, the principal shall start an immediate investigation into the matter, and (2) the completed investigation shall be reviewed by the Superintendent or designee and legal counsel for prompt and appropriate action, if warranted.

On September 18, 2001, Payne moved for summary judgment on the

grounds of, *inter alia*, qualified immunity and state-agent immunity, which the district court denied on September 28, 2007. As to qualified immunity on the equal protection claim, the district court determined that Payne failed to meet his initial burden to prove that he acted within the scope of his discretionary authority. The district court found that the Policy "virtually eliminated" Payne's discretion "with respect to the handling of sexual harassment allegations." As to state-agent immunity on the outrage claim, the district court likewise found that Appellant was not entitled to state-agent immunity because the Policy required him to investigate the matter and report the completed investigation to the Superintendent or designee, and he did not do either. This appeal followed.

Payne argues that the district court erred in denying him qualified immunity and state-agent immunity based on its finding that he lacked discretion under the terms of the Policy that required him to investigate and report complaints of sexual harassment. "We . . . review the district court's denial of a motion for summary judgment on the basis of qualified immunity *de novo*, viewing the facts in the light most favorable to the non-moving party." *Bates v. Harvey*, 518 F.3d 1233, 1239 (11th Cir. 2008) (citing *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004)). We review *de novo* the district court's rulings on state-agent immunity. *See Tinker v. Beasley*, 429 F.3d 1324, 1329 (11th Cir. 2005)

4

(per curiam) (citation omitted).

## DISCUSSION

As a threshold matter, we have jurisdiction to consider this appeal insofar as it presents a legal question (whether Payne acted outside his discretionary authority) applied to a given set of facts (viewed in favor to the non-moving party) that may be decided apart from considering the sufficiency of the evidence. *See Koch v. Rugg*, 221 F.3d 1283, 1295-96 (11th Cir. 2000). The same holds true as to state-agent immunity. *See Taylor v. Adams*, 221 F.3d 1254, 1260 n. 9 (11th Cir. 2000). We will address qualified immunity and state-agent immunity in turn.

I.    *Qualified immunity*[1]

To establish the defense of qualified immunity, the burden is first on the defendant to establish "that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) (citing *Evans v. Hightower*, 117 F.3d 1318, 1320 (11th Cir. 1997)). In turn, to establish that the challenged actions were within the scope of his discretionary authority, "a defendant must show that those

---

[1]We note that the district court denied qualified immunity only as to the equal protection claims but granted qualified immunity as to the substantive due process claims. As to the latter, the district court found that Payne did not violate either Appellees' substantive due process rights as "he did not cause the deprivation of their rights." The district court made no mention of discretionary authority as to the substantive due process claims.

actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Id.* at 1282 (citing *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995)). *See also Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265-66 (11th Cir. 2004) ("We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize.").

"In applying *each prong* of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Id.* at 1266 (emphasis added). In other words, when determining the scope of discretionary authority, a court looks to the general nature of a defendant's action, not the specific unconstitutional conduct. *See Harbert Int'l*, 157 F.3d at 1282 (providing that "[t]he inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act"). "Of course, we must be sure not to characterize and assess the defendant's act at too high a level of generality" but instead "we consider a government official's actions at the minimum level of generality necessary to remove the constitutional taint." *Harland*, 370 F.3d at 1266. Applied here, the proper scope of the inquiry is whether investigating and

reporting sexual harassment complaints generally fell within Payne's duties and authority.

Having defined the proper scope of the inquiry, we turn to the two-prong test. The first prong asks whether investigating and reporting complaints of sexual harassment is within Payne's duties as a principal. *See id.* at 1266 ("Put another way, to pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, but for the alleged constitutional infirmity, would have fallen with his legitimate job description."). But for Payne's alleged failure to act in accordance with the Policy, investigating and reporting such complaints falls well within Payne's duties as a principal.[1] The second prong asks whether investigating and reporting complaints of sexual harassment involved means that were within the scope of Payne's authority as a principal. Appellees respond that the Policy eliminated the principal's discretion. A government employee, however, may enjoy the benefit of qualified immunity even for ministerial actions so long as his or her actions meet the two-prong test. *See McCoy v. Webster*, 47 F.3d 404, 407 (11th Cir. 1995) (per curiam). The investigation and reporting of complaints (sexual harassment or otherwise) also

---

[1]Appellees offer little resistance to the first prong of the test. *See* Brief of Appellee C.C. et al. at 19 ("Here, even if Payne was performing a job related function, Payne cannot pass the second step of the *Hallowman* inquiry.").

7

falls within the perimeter of Payne's job-related functions. In addition, the means utilized – meeting with students and parents – were also within Payne's authority as principal, even if Payne did not do all that was required of him.

Having determined that Payne acted within his discretionary authority,[2] the burden now shifts to the Appellees to demonstrate that Payne's actions violated clearly established constitutional law. *See Harbert*, 157 F.3d at 1281. The district court, however, never reached this question and, thus, we have no record to review.[3] Accordingly, we remand this case to give the district court the first opportunity to apply the qualified immunity test as provided in *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

II.     *State-agent immunity*

In *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000) (plurality opinion), the

---

[2]The district court's denial of qualified immunity based on Payne's failure to comply with the Policy appears to only implicate qualified immunity with respect to R.H.'s equal protection claim insofar as Payne did not learn of C.C.'s allegations until much later. In other words, the requirements of the Policy were never triggered as to C.C. until Payne learned of the allegations made by C.C., at which point the Superintendent suspended the teacher and a criminal investigation began, rendering moot Payne's requirements under the Policy. The district court, however, drew no distinction between its analysis as to the Appellees' respective claims. We therefore assume that the district court's analysis applied to both Appellees' claims and, likewise, our analysis applies to the same.

[3]In considering the Appellees' Title IX cause of action, the district court concluded that, "viewing the allegations in a light most favorable to plaintiffs, a jury could find that defendant Payne was deliberately indifferent" to R.H.'s allegations of sexual abuse." This conclusion might reasonably be construed to to suggest that R.H.'s rights were clearly established, or at least to imply such a conclusion. As noted above, however, it is not our place to make this determination in the first instance.

8

Alabama Supreme Court restated the rule governing state-agent immunity, providing, in pertinent part, that "[a] State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's . . . exercising judgment in the discharge of duties imposed by statute, rule, or regulation in . . . educating students." 792 So. 2d at 405 (emphasis in original).[4]  The court tempered the new rule with the following exceptions:  "[n]otwithstanding anything to the contrary in the foregoing statement of the rule, a State agent *shall not* be immune from civil liability in his or her personal capacity . . . when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Id.* (emphasis in original).

In order to claim state-agent immunity, Payne bears the burden of demonstrating that the Appellees' claim for outrage arises from a function that would entitle him to immunity. *Giambrone v. Douglas*, 874 So. 2d 1046, 1052 (Ala. 2003) (citations omitted).  If he makes such a showing, the burden shifts to the Appellees who must establish that Payne acted willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of law. *Id.* (citations omitted).  The district court found that Payne was not entitled

---

[4]The Alabama Supreme Court has adopted the test for determining state-agent immunity as restated in *Cranman*.  *See Ex parte Butts*, 775 So.2d 173 (Ala. 2000).

to state-agent immunity, reasoning that "Payne's acts were not discretionary because the Board's anti-harassment policy does not provide any leeway for choice." As such, it appears that the district court concluded that Payne acted beyond his authority.[5]

We find no error in the district court's denial of state-agent immunity under Alabama law. *Cranman* created an exception to the state-agent immunity test for when a state actor acts beyond his or her authority. *Cranman*, 792 So. 2d at 405. Under Alabama law, "[a] State agent acts beyond authority and is therefore not immune when he or she 'fails to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.' " *Giambrone*, 874 So. 2d at 1052 (quoting *Butts*, 775 So. 2d at 178). Here, the Policy imposed affirmative duties on Payne to investigate complaints of sexual harassment and to submit a completed investigation to the Superintendent or designee for review. The district court found that Payne failed to do so. Under Alabama law, Payne acted beyond his authority by failing to comply with the requirements of the Policy. *See Ala. Dep't of Corr. v. Thompson*, 855 So. 2d 1016, 1020-21 (Ala. 2003) (finding that a warden's violation of a regulation prohibiting vehicles on grounds of correctional facility by

---

[5]While somewhat unclear as to the basis of its denial of state-agent immunity, the district court appeared to rely on the recognized exception of acting beyond his or her authority in that it quoted that language from *Cranman* and underlined the relevant passage.

10

maintaining a contradictory unwritten procedure constituted action "beyond his authority"); *Bayles v. Marriott*, 816 So. 2d 38, 41-42 (Ala. Civ. App. 2001) (affirming state-agent immunity but noting that "[w]e might reach a different result if, instead of the broadly stated, general safety policy, [the state agent] had instead been responsible for following a detailed rule or checklist and had failed in this responsibility").[6]  As such, Payne is not entitled to state-agent immunity.[7]

## CONCLUSION

In light of the foregoing, we **REVERSE** and **REMAND** the district court's decision as to qualified immunity with instructions to apply the test for qualified immunity under *Saucier* and **AFFIRM** the district court's decision as to state-

---

[6]We note that, under federal law, we asked a different question in determining whether Payne's actions were outside the scope of his discretionary authority than we asked under Alabama law in applying the exception to state-agent immunity of acting beyond his or her authority.  For qualified immunity, we asked (in the second prong) whether the nature of Payne's actions were outside his authority and whether he used means that were within his authority to achieve an otherwise acceptable end?  As noted above, Payne acted within his discretionary authority.  For state-agent immunity, however, we asked a slightly different question in applying the "beyond his or her authority" exception: whether Payne's actions actually proceeded beyond his authority?  Here, we do not consider only the nature of the actions that Payne took; rather, we also consider Payne's decision not to take further steps, specifically, his decision (1) not to conduct any meaningful investigation of R.H.'s complaint and (2) not to notify the superintendent of R.H.'s complaint.  Because of the Policy, Payne lacked the authority to decide not to take these actions.  Therefore, while none of the actions Payne took were outside the scope of his discretionary authority or by means that were not within his power to utilize for purposes of qualified immunity, his decision not to act further and to curtail the investigation when he did were not within his authority under state law.

[7]Payne also relies upon a series of cases (pre-*Cranman*) involving school supervisors and similar allegations to the ones *sub judice*.  In addition to applying the discretionary function test as opposed to the state-agent immunity test as set forth in *Cranman*, none of those cases allege that the school supervisor failed to act in the face of a clear rule.

11

agent immunity.

REVERSED and REMANDED in part, and AFFIRMED in part.